*FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re                                    )     Case No.   18-25001-E-7
                                         )
JOSEPH H. AKINS,                         )
                                         )
                     Debtor.             )
_____  )
                                         )
DOMINIQUE BLACK,                         )     Adv. Proc. No. 18-2187
                                         )     Docket Control No.   RLF-20
                     Plaintiff,          )
                                         )
v.                                       )
                                         )
JOSEPH H. AKINS,                         )
                                         )
                     Defendant.          )
_____  )

### MEMORANDUM OPINION AND DECISION DENYING
### MOTION FOR PREVAILING PARTY ATTORNEY'S FEES, SANCTIONS

Joseph H. Akins, Jr. ("Defendant") filed the Motion for Attorney Fees as in Support of Costs & as Allowed by Law ("Motion") seeking prevailing party fees in the amount of $275,500.00 pursuant to 11 U.S.C. §523(d); Federal Rules of Civil Procedure 54(d) as incorporated into Federal Rules of Bankruptcy Procedure 7054; and 11 U.S.C. § 105(a). The Motion seeks to recover these amounts from Dominique Black, the Plaintiff in this Adversary Proceeding.[1]

The Motion itself does not state the period Defendant is requesting fees for. After review

_____

[1] Sufficient Notice Provided. The Proof of Service states that the Motion and supporting pleadings were served on Plaintiff's Attorney on January 14, 2022. By the court's calculation, 62 days' notice was provided. 28 days' notice is required. L.B.R. 9014-1(a), (f)(1).

of Defendant's Attorney's[2] Declaration, Sheila Gropper Nelson, Esq. (Dckt. 263), it appears it began with the filing of this adversary and throughout the course of litigation.  However, Defendant has not provided a clear task billing analysis nor any exhibits evidencing Defendant's Attorney's time and billing records[3] to establish the proper period of services provided in this Adversary.  The Motion's evidentiary shortcomings are discussed below.

The Motion states that the fees are requested pursuant to Federal Rule of Civil Procedure 54(d) and Federal Rule of Bankruptcy Procedure 7054(b)(2).  The basis for the attorneys' fees is statutory, 11 U.S.C. § 523(d) and 11 U.S.C. § 105(a).

**Court's February 3rd Order for Supplementary Pleadings**

On February 3, 2022, the court issued an order requesting a supplemental pleading to Defendant's Motion be filed which states the grounds with particularity upon which the relief is based (as required by Fed. R. Civ. P. 7(b) and Fed. R. Bankr. P. 7007).  Dckt. 292.  The Motion itself merely stated that the Motion is brought pursuant to 11 U.S.C. § 523(d) and the inherent powers of the court, and is supported by the Points and Authorities filed herewith, supporting declarations and Bill of Costs filed with the Clerk of the Court.  Motion, p. 2:1-5, 10-11; Dckt. 260. The court was concerned with the lack of grounds stated in Defendant's Motion, and if the court was tasked with "mining the pleadings" to identify possible grounds, the court could possibly inadvertently misstate the grounds Defendant (subject to the certifications under Federal Rule of Bankruptcy Procedure 9011) was deemed to be stating with particularity.

**Defendant's Supplement**

On February 14, 2022, Defendant filed a pleading titled "Supplemental Motion for Attorney's Fees as Costs & Allowed by Law. Dckt. 300 (The "Supplement"). The court interprets

---

[2]  In this Decision, the court refers to the attorney for the Defendant as "Defendant's Attorney" and the attorney for Plaintiff as "Plaintiff's Counsel" to reduce potential confusion over "which attorney is being referenced."

[3]  The last sentence of the Motion states, "Contemporaneous time records are available for in camera review by the Court as the Plaintiff has filed a notice of appeal."  Motion, p. 2:12-13; Dckt. 260. However, none were provided to this court.  As discussed herein, experienced litigation counsel who anticipate seeking prevailing party fees know to make their billing entries accurate, but not disclose attorney-client privilege communications.

1    this to be the "supplement to the [existing] Motion (not an amended motion) which states the

2    grounds with particularity upon which the requested relief is based." Order, Dckt. 292.

3        In the Supplement, Defendant states with particularity the grounds for this Motion for

4    Prevailing Party Fees, which include:

A.    "On Dec. 6, 2021, [Defendant] was determined by the Court to be the prevailing party after 5 days of trial. This Court found that [Plaintiff] had failed to sustain his burden of proof as to each cause of action and that Mr. Black lacked credibility. Supplement, p. 2:7-10; Dckt. 300."

B.    "Mr. Black's adversary action sought to determine that his 'alleged' claim(s) were non-dischargeable under 11 U.S.C. §523(a)(2), (a)(4) & (a)(6). Mr. Black had filed his pro se Complaint on November 13, 2018, and it was amended on April 4, 2019 (Doc. No. 21). After vigorous motion practice the Amended Complaint was answered on September 12, 2019 (Doc. No. 75). Mr. Black had obtained a default judgment against deceased debtor more than 8 ½ years before the petition had been filed in August, 2018." Id. at p. 2:12-16.

12        As noted in the Supplement, what Defendant frames as Plaintiff seeking "to determine that

13    his 'alleged' claim(s) were nondischargeable" were actually obligations owing on a final judgment

14    issued by the California Superior Court. There were no "alleged claims" being asserted, only an

15    unassailable State Court Judgment.

16        What Defendant states as being a "vigorous motion practice" consisted of first a Motion to

17    Dismiss by Defendant that was denied without prejudice for a failure to state with particularity any

18    grounds for dismissal of the Complaint. Civil Minutes and Order; Dckts. 49, 51. The second part

19    of the "vigorous motion practice" was a second Motion to Dismiss by Defendant. The court issued

20    an order denying the second Motion to Dismiss, with the court concluding:

Contrary to Defendant's assertion that the above is not "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," it clearly does. While Defendant may need to avail himself of his right to conduct discovery, it is clear what is alleged to have occurred.

Plaintiff took the Vehicle to NORCAL and Defendant to have it restored, with a time period specified in which this occurred. It is alleged that NORCAL is a business that Defendant owned or was associated with, and one in which Defendant obtained sole control over the lease for the property in which NORCAL did business.

The specific promises made by NORCAL and attributed to Defendant are alleged as to the restoration and customization work to be done, the monies paid in reliance on the promises made, and that the work was not done. It is further alleged what Defendant failed to do, personally and through NORCAL, in addition to the

taking and use of the Vehicle for use by Defendant's brother.

Defendant is clearly on fair notice as to what the claim is based on, with whom Plaintiff communicated, what is alleged to have been said, and how it is attributed or stated to have been said by Defendant.

Civil Minutes, pp. 10-11; Dckt. 81. The court's Ruling on the second Motion to Dismiss concludes with:

While Defendant may dispute what is alleged, that is subject to evidence to be presented to the court. The First Amended Complaint sufficiently states the basis for the claims asserted, with the Defendant being on full, fair, and quite detailed notice of what is alleged. Defendant's "concerns" over identifying specific dates is the subject of good faith discovery. There are no naked assertions, or formalistic pleading of sterile legal grounds in the First Amended Complaint. The "facts" alleged are many, sufficient, and clearly provide a basis for Defendant to fairly know what is asserted, the claims made, and what he needs to address in asserting his defense.

The Motion is denied. Defendant shall file and serve his Answer on or before September 12, 2019.

*Id*. at p. 12. Order Denying Motion to Dismiss, Dckt. 82.

C. "[Plaintiff] engaged in numerous acts to increase the costs of litigation and to thwart discovery by [Defendant], identified in the supporting declarations and other papers previously filed with the Court." Supplement, p. 2:19-21; Dckt. 300.

D. "A significant portion of the fees sought relate to the time prior to and during trial that was required to deal with the redundant and irrelevant exhibits lodged by Mr. Black with the Court. [Plaintiff]'s counsel admitted both in the Omnibus Opposition to the *limine* motions and during oral argument at trial that there had been an absence of discretion in plaintiff's production of exhibits. (Doc. No. 233 Omnibus Opposition to Motions *in Limine*) Significant time was required, prior to trial to deal with [Plaintiff's] repeated conduct to abuse the discovery process." *Id*. at pp. 2:24-27, 3:1-3.

E. "As a direct result of plaintiff's lodging of redundant and irrelevant trial exhibits, trial was continued for two additional days increasing the costs to defend the litigation. Trial concluded on December 6, 2021." *Id*. at p. 3:4-5.

F. "As reflected in Mr. Black's own testimony and despite his repeated assertion that he had 20,000 pages of materials to support his alleged 'claims,' he failed to meet his burden of proof." *Id*. at p. 3:6-7.

G. "The Court made oral findings from the bench on December 6, 2021 in favor of Mr. Akins Jr. on all causes of action and finding that Mr. Black lacked credibility." *Id*. at p. 3:10-12.

Defendant continues in the Argument section of the Supplement to state the following legal grounds for the requested relief.

H. "A prevailing party in an adversary action, brought under 11 U.S.C. § 523(a)(2), can

move for attorney fees under 11 U.S.C. § 523(d)." *Id*. at p. 3:22-23.

I.     "A court can disallow recovery of attorney fees under 11 U.S.C. §523(d) if the creditor can demonstrate that the alleged 'claim' was substantially justified or if the Court determines that the alleged claim was either a 'business' debt or interstitial in nature." *Id*. at p. 4:1-4.

J.     "This Supplemental Motion and the supporting papers move for the award requested on the grounds that the claim(s) by [Plaintiff] were not substantially justified; and that the alleged 'claim' was illusory and therefore does not fit neatly into the categories of 'consumer' 'business' or 'interstitial'." *Id*. at p. 4:4-7.

K.     "That [Plaintiff]'s conduct included a failure to file a claim in the underlying bankruptcy action, pursuit of the adversary with knowledge that the asserted claims would not be supported by admissible evidence as set forth in both the Court's findings from the bench and the final judgment, and the act of failing to exercise due diligence in the lodging of irrelevant and redundant exhibits for the trial, with knowledge that such conduct would and did increase the costs for defense of the litigation, justifies an award of attorney fees as requested." *Id*. at p. 4:9-14.

L.     As an additional basis for awarding attorney's fees to Defendant, "11 U.S.C. § 105(a) provides the Court with inherent discretion to protect the judicial process." *Id.* at p. 4:16.

1.     "The award of attorney fees sought by the motion are intended to deter the conduct evidenced by Mr. Black in abusing the judicial process without regard to the burden on time and resources for both the other participants and the Court. *Id*. at p. 4:17-19.

M.     "The motion for fees was a stand alone motion as required by FRCP Rule 54(2)(A) made applicable by FRBP 7054(b)(2)(A). Under 11 U.S.C. §523(d) and 11 U.S.C. §105(a) the Court is vested with broad discretion to award attorney fees as costs in the within matter to the prevailing party." *Id.* at p. 5:4-6.

**Defendant's Declaration**

On January 14, 2022, Defendant filed a Successor Representative Declaration in Support of Motion for Attorneys' Fees as Costs & Bill of Costs ("Declaration").  Dckt. 262. Defendant's six (6) page declaration contains many factual assertions including:

A.     Defendant has incurred increased costs to defend the litigation as a result of Plaintiff.

B.     Defendant assisted their counsel in reviewing document production.

C.     Defendant attended Plaintiff's deposition and witnessed Plaintiff's contested behavior.

D.     Defendant's Attorney did not pursue motions to avoid costs of litigation.

Defendant also includes statements that are not based on personal knowledge, but are rather statements that appear in part to be speculation by Plaintiff and Plaintiff's Counsel and also legal

contentions, not appropriate as a lay witness:

    A.    "I know the information set forth herein of my own personal knowledge unless set forth on information and belief and as to that information I believe it to be true." Declaration, Dckt. 262 at p. 1:23-25.

With this statement, Defendant is telling the court that some of what is in his Declaration is his

personal knowledge, as required by Federal Rule of Evidence 601 and 602, but some of it is only

based on information and belief. The personal knowledge testimony and the information and belief

testimony are not identified in the Declaration.

    B.    "He [Plaintiff] intended to increase my costs to defend the litigation to increase the burden of litigation to harass me into settling." *Id.* at p. 2:6-7.

While this may be Defendant's factual or legal conclusion, arguing why he should be awarded

attorney's fees, it is not personal knowledge testimony of a fact or event.

    C.    "I believe that was always the intent of Dominique Black [Plaintiff] and his conduct to make a settlement, even if unjustified, attractive enough for him to continue to get money for a claim that lacked merit." *Id.* at p. 2:13-15.

These are not facts, but Defendant's argument for a trial brief.

    D.    "It would not surprise me if those attorneys simply added their names to pleadings which were actually produced by Dominique Black. Even if that is accurate, whether they authored the pleadings or just lent their processional veneer to his handiwork, they made pursuit of his baseless claims possible." *Id.* at p. 2:20-23.

These are not facts, but Defendant's argument for a trial brief.

    E.    "Had Young & Lazzarini engaged in such professional diligence I am confident that they would have determined that the alleged 'claims' lacked merit even when viewed through the lens of zealous advocacy." *Id.* at p. 3:3-5.

No basis for Defendant providing a legal opinion concerning "professional diligence" or his

conclusion that Plaintiff counsel could prospectively conclude that Plaintiff's claims lacked merit.

    F.    "That conduct, by both Black and his attorneys, was intentional and deliberate as demonstrated by the conduct and comments of both." *Id.* at p. 3:17-18.

    G.    "My belief that all of the conduct was intended to increase the burden and costs to defend the litigation and to harass me into settling is also based on the fact that Mr. Black knows no boundaries . . ." *Id.* at p. 4:1-3.

    H.    "Like so many others I have had to deal with Black's harassment, the

1    financial burden he has created, and emotional stress caused by his pursuing
     baseless claims." *Id.* at p. 6:21-22.
2

3        The court has been presented with a declaration in which the witness provides some

4    unidentified portion of his "testimony" based only on "information and belief." That Declaration

5    is the testimony of a witness presented in writing in lieu of the witness being put on the stand. Non-

6    expert witness testimony must be based on the personal knowledge of the witness. FED. R.

7    EVID. 602. As discussed in Weinstein's Federal Evidence § 602.02:

8        A witness may testify only about matters on which he or she has first-hand
         knowledge. Because most knowledge is inferential, personal knowledge includes
9        opinions and inferences grounded in observations or other first-hand experiences.
         The witness's testimony must be based on events perceived by the witness through
10       one of the five senses.

11   Recently, the Ninth Circuit Court of Appeal addressed this personal knowledge issue, stating:

12
         Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced
13       sufficient to support a finding that the witness has personal knowledge of the
         matter." FED. R. EVID. 602. Rule 602 requires any witness to have sufficient
14       memory of the events such that she is not forced to 'fill[] the gaps in her memory
         with hearsay or speculation.' 27 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE
15       & PROCEDURE Evidence § 6023 (2d ed. 2007). Witnesses are not 'permitted to
         speculate, guess, or voice suspicions.' *Id.* § 6026. However, '[p]ersonal knowledge
16       includes opinions and inferences grounded in observations and experience.' *Great
         Am. Assurance Co. v. Liberty Surplus Ins. Co.*, 669 F. Supp. 2d 1084, 1089 (N.D.
17       Cal. 2009) (citing *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999)). Lay
         witnesses may testify about inferences pursuant to Rule 701:
18
             If a witness is not testifying as an expert, testimony in the form of an
19           opinion is limited to one that is: (a) rationally based on the witness's
             perception; (b) helpful to clearly understanding the witness's
20           testimony or to determining a fact in issue; and (c) not based on
             scientific, technical, or other specialized knowledge within the scope
21           of Rule 702.

22   FED. R. EVID. 701.

23   *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015).

24       As discussed in Moore's Federal Practice, Civil § 8.04, the use of "information and belief"

25   is a pleading device for the use in a complaint (or motion) to allow a plaintiff (movant) to fill in the

26   gaps of alleging a claim pending discovery.

27       [4] Allegations Supporting Claims for Relief May Be Made on Information and
         Belief
28

Rule 8 does not expressly permit statements supporting claims for relief to be made on information and belief (see § 8.06[5]). However, Rule 11 permits a pleader, after reasonable inquiry, to set forth allegations that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" (see Ch. 11, Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions). Courts have read the policy underlying Rule 8, together with Rule 11, to permit claimants to aver facts that they believe to be true, but that lack evidentiary support at the time of pleading. Generally, however, such averments are allowed only when the facts that would support the allegations are solely within the defendant's knowledge or control.

Nothing in the *Twombly* plausibility standard (see [1], above) prevents a plaintiff from pleading on information and belief. A pleading is sufficient if the pleading as a whole, including any allegations on information and belief, states a plausible claim. On the other hand, if the pleading fails to permit a plausible inference of wrongdoing, or if the allegations are nothing more than legal conclusions, the pleading will not survive a motion to dismiss.

This is incorporated into Federal Rule of Bankruptcy Procedure 9011, which repeats the provisions of Federal Rule of Civil Procedure 11(b), stating:

(b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Though allowed as a pleading device, the certification required by 28 U.S.C. § 1746 does not allow testimony in declaration to be provided under penalty of perjury being true because the witness merely "is informed and believes (or desires because likely it would mean the witness party would prevail) it is true."

The objectionable statements in Defendant's Declaration will not be taken into consideration by the court as factual testimony, though the court considered them as part of Defendant's

Attorney's written arguments.

**Defendant's Attorney's Declaration**

Defendant's Attorney filed an eleven (11) page declaration in support of Defendant's Motion on January 14, 2022 ("Defendant's Attorney's Declaration"). Dckt. 263. Defendant's Attorney largely reaffirmed many of the grounds already listed in Defendant's Motion and Declaration. Defendant's Attorney also mentions contemporaneous time entries were maintained from the petition date to the present time. Defendant's Attorney's Declaration, Dckt. 263 at p. 3:5-7. However, those billing records are not provided in support of this Motion.

Additionally, Defendant's Attorney provides a summary of increased time spent litigating the matter:

**Review 375 Documents Produced** - Defendant's Attorney states they spent 27.50 hours reviewing 375 pages of poorly labeled documents that were produced 100-days late.

Fees Requested:         27.50 hours,
                        $475.00 hourly rate =
                        **$13,062.50**

Dckt. 263 at p. 4:16.

**Plaintiff's Deposition** - Defendant's Attorney states they spent 9.75 hours trying to get Plaintiff to appear at the deposition. Additionally, they spent 35 hours preparing and conducting for the deposition, including time spent preparing for cancelled depositions and 18.50 hours conducting the deposition.

Fees Requested:         63.25 hours,
                        $475.00 hourly rate =
                        **$30,043.75**

*Id.* at p. 4:25-26.

**Review of 18,444 Insurance Documents Produced** - Defendant's Attorney states they spent 17.5 hours going through 18,444 documents of "irrelevant and duplicate" material relating to Plaintiff's insurance company. Defendant's Attorney states motions to compel and/or motions for protective order were not filed because wanted to keep the costs of litigation down.

Fees Requested:         17.75 hours,
                        $475.00 hourly rate =
                        **$8,431.25**

*Id.* at p. 6:1-2.

**Plaintiff's Deposition Cancellations** - Defendant's Attorney states Plaintiff frequently cancelled scheduled depositions. Defendant's Attorney spent 17.75 hours preparing for each of the cancelled depositions and attendance of the September deposition.

> Fees Requested:          17.75 hours,
> $475.00 hourly rate =
> **$8,431.25**

*Id.* at p. 6:13-14.

**Preparation for Trial** - Defendant's Attorney states they took 300 hours to prepare for their five (5) day trial. This equates to $142,500.00 billed. Defendant's Attorney states this is exclusive of the motions in limine and objects to evidence and **some** of the time directed to the repetitive materials. It is concerning to the court that "some" of the time directed to the repetitive materials may be double billed. The court cannot confirm this, however, without billing statements that have not been provided to the court.

> Fees Requested:          300 hours,
> $475.00 hourly rate =
> **$142,500.00**

*Id.* at p. 6:18-19.

**Motions in Limine** - Defendant's Attorney states it took **at least 39.5 hours** to research, draft, and file the motions in limine and objections to evidence. Again, Defendant's Attorney's billing records are of concern as she states "at least," instead of concretely giving a number. Defendant's Attorney additionally states it took 3.5 hours at trial and after the first day of trial to organize the exhibits.

> Fees Requested:          43 hours
> $475.00 hourly rate =
> **$20,425.00**

*Id.* at p. 7:11-12.

**Duplicate Exhibits at Trial** - Defendant's Attorney states there was a "conservative estimate" of 3 hours of the courts time taken up by dealing with Plaintiff's exhibits.

> Fees Requested:          3 hours
> $475.00 hourly rate =
> **$1,425.00**

*Id.* at p. 7:22-23.

Other than being given these lump sum amounts, the court has no idea of the actual legal services that were provided, for which compensation was sought, for the 472.25 hours of time for which recovery is sought at the rate of $475.00 an hour.

Defendant's Attorney represents that there are an additional $80,000.00 of fees and costs incurred for time caused by Plaintiff and his tactics for which recovery either is not mandated by the

10

cost bill or are not being sought by Defendant's Motion. Dckt. 263 at p. 8:10-12.

In preparing this Memorandum Opinion and Decision, the court notices another "curious" aspect to the fee amounts and blocks of hours of attorney billings for which fees were requested – they all end in either .25,  .50, .75, or .00 hours.  The .50 and the .00 hour ending are not unusual, but the .25 and .75 raise some questions.

The standard for billing of time is in one-tenth of an hour increments - .10, .20, .30, etc.  For example, if the legal service was 6 minutes or less, .10 hours are billed; if the legal service was 12 minutes or less but more then 6 minutes, .20 hours are billed, if the legal service was 48 minutes or less but more than 42 minutes, then .80 hours are billed.  This results in there being round tenths of an hour billing time to the right of the decimal point.

For Defendant, the block of billing times ending in .25 and .75 cannot be generated by billing in one-tenths of an hour.  It would be possible to generate such a result if the attorney was billing in .05 (one-half of one-tenth of an hour) increments, but such a small billing increment is not something that has been seen in the court over the past 40 years (from the undersigned judge's personal experience).  The other way to generate the .25 and .75 billing endings would be for counsel to bill in .25 minium billing increments (the minimum time billed being for 15 minutes).  If so, then a phone call and note to file that took 10 minutes would be billed for 15 minutes of time.  A legal task which took 16 minutes would be billed for 30 minutes of time.

With an attorney using .10 billing increments, an attorney doing four separate 16 minute billing tasks, which using .10 billing increments would generate 1.2 hours of payable billings (.3 hours for each task x 4 task billing entries = 1.2 hours).  However, using a large .25 billing increment, then the four tasks would result in there being 2 hours of payable billings being generated by the attorney (each 16 minute billing being a .50 hour billing x 4 task billing entries = 2 hours).

The evidence presented by Defendant does not show how these block billing numbers were generated, or the actual task for which each billing entry is based.

**Experience of Defendant's Attorney**

Defendant is not represented by an inexperienced, new to the profession, unsophisticated attorney.  As stated at trial and connection with this fee Motion, Defendant's Attorney is very

1  experienced in federal court, including bankruptcy both in the Eastern District of California and the

2  Northern District of California.

3          In Defendant Attorney's Declaration, the information concerning said Attorney's experience

4  and basis for requesting the fees be computed using a $475.00 an hour billing rate include:

5          3. I have been admitted to practice in the United States District Court for the Eastern
           District of California and in this honorable Court.
6
           4. I was certified by the California State Bar as a California State Bar Certified
7          Bankruptcy Law Specialist in 1997 and as such was the first certified bankruptcy
           law specialist in San Francisco and San Mateo Counties and I have maintained and been
8          re-certified in every year thereafter.
           . . .
9          11. I am a graduate of the University of San Francisco School of Law and have
           practiced law in the State of California since 1978. My practice has included
10         complex securities and antitrust law, complex civil business litigation in both state
           and federal courts, work at the Federal Deposit Insurance Corporation and as an
11         administrative hearing officer with the California Department of Social Services. I
           have practiced bankruptcy law since 1992 and became the first California State Bar
12         Certified Bankruptcy Law Specialist in the City and County of San Francisco in 1997
           and have maintained and been re-certified since that initial date of certification.
13
           12. I am admitted to practice in each of the federal districts throughout the State of
14         California as well as the Ninth Circuit Court of Appeals. In addition to my trial
           practice I have argued in both State and Federal Appellate Courts, including before
15         the Ninth Circuit Court of Appeals.

16         13. Over the course of my practice I have served as a panelist for fee disputes for the
           San Francisco Bar Association; and I continue to assist with pro bono cases through
17         the Aids Legal Referral Panel. I have provided continuing legal education through
           sundry programs and I provide informal pro bono assistance regularly throughout my
18         practice.
           . . .
19         30. My hourly rate for this type of case is $475.00 per hour for my time. This rate has
           remained constant for more than two years and is either below current market
20         prevailing rate or congruent with market rate for attorneys with more than 30 years
           of experience and/or California State Bar specialization certification. I have reviewed
21         the California market through conversations with other attorneys in the field. I have
           knowledge of the hourly rates charged by other firms for attorneys with comparable
22         experience. Based on that information, the rate for my time in this case is reasonable
           and either below or within prevailing market rates in both the Sacramento and San
23         Francisco Bay Area for attorneys with comparable expertise, experience, and
           qualifications.
24
25  pp. 1:23.5-25.5, 2:1-3, 3:8-22, 8:13-21; Dckt. 263.  Defendant's Attorney is experienced in many

26  areas of the law, certified, handled complex litigation, litigated not only in trial courts but in State

27  and Federal Appellate Courts, and has served as a hearing officer with the California Department

28  of Social Services.

1   As this court addressed and determined during the hearing, Defendant and Defendant's

2   Attorney charted and pursued their litigation strategy. They were not left dancing at the end of

3   Plaintiff's litigation string, unknowing and inexperienced in the law of how to properly address

4   litigation and discovery disputes. When asked why, if they believed that Plaintiff and Plaintiff's

5   Counsel were engaging in improper discovery tactics prior to trial why Defendant did not come to

6   the court, Defendant's only response is that Defendant did not want to incur the expense of a

7   discovery motion. As noted by the court, Defendant's and Defendant's Attorney's litigation strategy

8   was to incur what they now complain of actionable, improper conduct, justifying hundreds of hours

9   of legal fees, rather than one simple motion to allow a federal judge to exercise his or her control

10  over the federal judicial process to bring such alleged "shenanigans" quickly to an end, thereby

11  "saving" defendant tens or hundreds of hours of attorney fee billings.

12  **Memorandum of Points and Authorities**

13  Defendant filed their Points and Authorities in Support of Motion on January 14, 2022.

14  Dckt. 264. The Points and Authorities largely reiterates the legal arguments stated above.

15
16              **PLAINTIFF'S OPPOSITION**
                **AND OPPOSITION PLEADINGS**

17  Plaintiff filed an opposition on March 1, 2022. Dckt. 304. Plaintiff opposes on the following

18  grounds:

19      1.   In Defendant's Pre-Trial Statement (Dckt. 195), Defendant stated there is no
             basis or provision for attorneys' fees. The court adopted this in their
20           August 10, 2021 Trial Order (Dckt. 207). Plaintiff states Defendant waived
             any claim for attorney's fees. Upon court's review, the Pre-Trial Conference
21           Statement by Defendant's Attorney states "There is no basis or provision for
             attorneys fees." Dckt. 195 at p. 5:15-16. Additionally, the Notice and Order
22           for Trial, issued on August 10, 2021, states no basis for attorney's fees.
             Dckt. 207 at p. 6:22-23.
23
        2.   11 U.S.C. § 523(d) applies to consumer debts. The underlying debt is
24           commercial. Opposition, p. 5:20-24; Dckt. 304.

25      3.   Plaintiff was substantially justified in litigating the business debt against
             Defendant. *Id.* at p. 5:26-28.
26
        4.   Plaintiff was at a disadvantage of attempting to establish fraud by memory
27           and death of a witness which constitutes a Special Circumstance. *Id.* at
             p. 6:23-7:6.
28

5.      Relief under 11 U.S.C. § 105(a) is not warranted because Defendant's Motion does not allege bad faith that would warrant sanctioning Plaintiff with $275,500.00 in attorney's fees. *Id.* at p. 12:7-10.

6.      Total fees in the amount of $275,500.00 are excessive. *Id.* at p. 12:16-19.

**Plaintiff's Declaration**

On March 1, 2022, Plaintiff filed a Declaration in support of the Opposition ("Plaintiff's Declaration"). Dckt. 306. Plaintiff's Declaration does not state that any portion of it is based on "information and belief," but that the testimony is based on Plaintiff's personal knowledge, unless it was stated so in Plaintiff's Declaration. *Id.*, p. 2:2-4 Plaintiff's two (2) page declaration contains several factual assertions including:

1.      "At no time in this litigation did I take any action in bad faith, nor did I have any intent to abuse the judicial process or harass or unduly burden the Defendant or his counsel in this case." Plaintiff's Declaration, Dckt. 306 at p. 2:5-7.

Plaintiff may point to this as being a factual or legal conclusion. It is the witness stating what he believes he did. But it is for the court to make a conclusion as to whether the act or action taken was in bad faith or with an intent to abuse, and the court does not merely accept Plaintiff's conclusion of his conduct.

2.      "I brought this litigation in the good faith belief that I was defrauded by Defendant and his business associates and based on the judgment I had obtained in state court." *Id.* at p. 2:8-10.

3.      "I did not instruct my counsel to take any actions for the purposes of harassment nor to delay proceedings in this litigation." *Id.* at p. 2:11-12.

4.      "The 20,000 pages of documents referenced as the Fireman's Fund documents or the Insurance Litigation Documents were produced to me in the same manner and format as they were produced by my counsel to Defendant. Fireman's Fund created the PDF files. The 20,000 pages of Fireman's Fund documents were produced to Plaintiff in the same manner they were produced to Defendant." *Id.* at p. 2:13-16

5.      "In or about December 2020, prior to my scheduled deposition, I had a COVID exposure in my office. Due to my age and the age and health of my wife, I took extra quarantine precautions that required me to postpone my December deposition." *Id.* at p. 2:17-20.

6.      "I was prepared to attend my deposition on January 21, 2021 before it was unilaterally cancelled by Defendant." *Id.* at p. 2:21-22.

///

14

**Plaintiff's Counsel's Declaration**

On March 1, 2022, Plaintiff's Counsel filed a declaration in support of the Opposition ("Plaintiff's Counsel's Declaration"). Dckt. 305. Plaintiff's Counsel's Declaration does not state that any portion of it is based on "information and belief." Plaintiff's Counsel's seven (7) page declaration contains many factual assertions including:

1. "At no time in this litigation did I take any action in bad faith, nor did I have any intent to abuse the judicial process or harass or unduly burden the Defendant or his counsel in this case. This litigation was highly contentious with a great deal of personal animus between the parties." *Id.* at p. 2:7-10.

2. "In or about October 2020, I began a series of meet and confer discussions with Defendant's Attorney regarding Plaintiff's responses to Defendant's Requests for Production. Due to Plaintiff's records being kept off-site and under restricted access due to local COVID protocols and due to Plaintiff's work providing staffing and resources for bio-tech companies working on the COVID vaccine, Plaintiff was unable to produce documents by the response date for Defendant's document request." *Id.* at p. 2:12-18.

3. "Plaintiff requested a sixty (60) day extension to provide written responses and all responsive documents, which Defense counsel denied. Counsel instead offered a 14-day extension, which was insufficient to provide the records under the circumstances during a peak period of the COVID-19 pandemic." *Id*. at p. 2:19-22.

4. "Unable to meet the 14-day extension deadline, Plaintiff served written responses stating he had no documents in his possession at that time, but that documents would be provided as soon as possible." *Id*. at p. 2:23-25.

5. "During this entire period between October 2020 and December 2020, I engaged in regular meet and confer correspondence with counsel for Defendant and kept counsel updated on the status of production." *Id*. at p. 2:25-28.

6. "On or about December 28, 2020, Plaintiff served written, supplemental responses to Plaintiff's document requests including document production of approximately 375 pages." *Id.* at p. 3:1-3.

7. "The documents consisted largely of invoices and payment records which were separated out into 'A' and 'B' folders each with a different file name including the date of the invoice on the Norcal Invoices." *Id.* at p. 3:12-14.

8. "During meet and confer discussions between March 2021 and May 2021, Counsel for Defendant requested Plaintiff's Counsel identify and produce the 20,000 documents referenced by Plaintiff at his deposition (the 'Insurance Litigation Documents')." *Id.* at p. 3:18-21.

9. During the same time period, Defendant served their Motion for Summary Judgment interrupting the production of documents in order for Counsel to respond. *Id.* at p. 3:22-23.

15

10. Counsel reviewed the documents for privileged content and categorized them to correspond to Defendant's document requests. *Id.* at p. 3:28.

11. "The Document requests included Request No. 15: 'Any and all writings which constitute, evidence, discuss, set forth, summarize or in any way relate to any and all communications between YOU and anyone relating to the VEHICLE from January 1, 1999 through to the present time, that YOU do not claim as privileged.'" *Id.* at p. 4:4-7.

12. "The Insurance Litigation Documents also included pictures of the Vehicle, handwritten correspondence between Plaintiff, Mr. Tirpak, and Mr. Sarganis, and other highly relevant documents to this dispute. Many of the records in the Insurance Litigation Documents were used as trial exhibits by Plaintiff." *Id.* at p. 4:12-15.

13. "When I received the Insurance Litigation Documents, they were divided into approximately 35 PDF files with pages sequentially numbered. [informed and believed sentence]  The files as produced to me contained security settings on the files that prevented deleting pages in the series or extracting pages. I was unable to remove any duplicate pages from the PDF files and instead was only able to sort and organize the files as responsive to Defendant's request by referencing the series of documents it was contained in. All documents were already sequentially BATES stamped with FFIC notation." *Id.* at p. 4:16-25.

14. "On or about December 10, 2020, I emailed counsel for Defendant stating that Plaintiff would need to reschedule his December 18, 2020 deposition due to a potential COVID exposure." *Id.* at p. 5:8-10.

15. "On or about December 17, 2020, counsel for the parties agreed to reschedule Plaintiff's deposition to January 21, 2021." *Id.* at p, 5:11-12.

16. "On January 20, 2021, I emailed counsel for Defendant requesting log-in instructions for Plaintiff's remote deposition. Counsel for Defendant responded the deposition would not go forward on January 21, 2021 and would be rescheduled.  Prior to January 20, 2021, I received no notice from Defense Counsel the deposition was being postponed." *Id.* at p. 5:13-17

17. "Following Defendant's unilateral cancellation, the parties agreed to hold Plaintiff's deposition on March 29, 2021 and Plaintiff appeared on that date." *Id.* at p. 5:18-19.

18. "In reviewing documents to prepare Plaintiff's trial binders in this action, I noticed there were several versions of the invoices and payment records. Some records contained handwritten notations that were either not present or not readily apparent on the original or copies of the records. I elected to be overinclusive in production of his trial exhibits so as not to be left missing any records when presenting Plaintiff's case at trial." *Id.* at p. 5:20-25.

19. "While preparing Plaintiff's trial binders, I was working alone in my office, with support staff and Plaintiff available only by remote means due to COVID-19 protocols." *Id.* at p. 5:26-28.

20. "I was and am in a high-risk demographic for complications that could arise from COVID." *Id.* at p. 6:1-2.

21.   Plaintiff's Counsel's efforts were further hindered by his inability to use his normal printing company. *Id.* at p. 6:9-18.

22.   After duplication of the trial binders Plaintiff's Counsel became aware of errors in the printing and page numbering, but did not have time to correct the issues before delivery to the Court. *Id.* at p. 6:19-21.

23.   Plaintiff's Counsel was unaware that amended trial binders would be allowed and had they known they would have brought corrected binders to the first day of trial. *Id.* at p. 6:22-25.

24.   Any conduct related to the trial binders was inadvertent and not intentional. *Id.* at p. 6:26-28.

25.   "When the issue was raised by the Defendant at trial, the Court asked if I could fix the binders. With the help and hard work of support staff, my office made its best efforts to correct the errors, including hand delivering copies to Defense counsel's hotel room after hours." *Id.* at p. 7:1-4.

26.   "At no time in this litigation did I fail to respond to correspondence sent by Defendant's Attorney." *Id.* at p. 7:9-10.

27.   At no time did Plaintiff's Counsel take any action for the purpose of harassment or delay nor did they act with any intent to abuse the judicial process or disrespect the court. *Id.* at p. 7:11-12.

As with all evidence presented, the court does not just accept as true the factual statements, but makes the ultimate findings of fact and determinations of credibility of witnesses.

**Exhibits in Support of Plaintiff's Opposition**

On March 1, 2022, Plaintiff also filed the following exhibits in support of the opposition to the Motion for Attorney's Fees:

1.   Defendant's 3rd Amended Notice of Taking of Deposition & Request for Document Production to Dominique Black.

2.   Screenshot of Fireman's Fund Document Production.

3.   Dominique Black's Amended Second Supplemental Responses to First Set of Request for Production.

4.   Screenshot of Document Production for First Set of Requests for Production.

Dckt. 307.

**DEFENDANT'S REPLY AND SUPPORTING PLEADINGS**

On March 8, 2022, Defendant filed a reply to Plaintiff's opposition (Dckt. 317) stating:

A.   Plaintiff failed to provide credible evidence to support their Causes of Action in the First Amended Complaint. *Id.* at p. 1:9-10.

B.    The claim asserted by Plaintiff was not supported by law and fact and therefore was not substantially justified. *Id.* at p. 1:10-13.

C.    Mr. Black was represented by competent counsel. *Id.* at p. 1:18-20.

D.    Mr. Black intended to increase the cost of litigation in order to force a settlement. To not award fees would reward that conduct, which is the very kind of conduct 11 U.S.C. §523(d) was intended to discourage. *Id.* at p. 3.

E.    The court should use broad discretion to thwart abuse of the adversary process **"[independent] of the difficulty to label the claim as a 'consumer' debt."** *Id.* at p. 3:22-25.

This point goes to the issue, addressed at the hearing and below, as to why and how Defendant could assert that Defendant was entitled to attorney's fees based on 11 U.S.C. § 523(d), which states in its plain language that it only relates to an asserted consumer debt. Consistent with the above, Defendant's Attorney's argument has been that even though that is not what the law provides, the court should nevertheless cite that statute as the justification to punish the Plaintiff for the alleged wrongs. As the Supreme Court and the Ninth Circuit Court of Appeals have made abundantly clear, a federal judge does not just do what he or she believes should be the law, but the judge actually follows and applies the law. *See, for example, Law v. Siegel*, 571 U.S. 415, 421 (2014), stating:

> It is hornbook law that §105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 Collier on Bankruptcy ¶105.01[2], p. 105-6 (16th ed. 2013) . . . That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere. *See Morton v. Mancari*, 417 U. S. 535, 550-551, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974); *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U. S. 204, 206-208, 52 S. Ct. 322, 76 L. Ed. 704 (1932). Courts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions. *Degen v. United States*, 517 U. S. 820, 823, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996); *Chambers v. NASCO, Inc.*, 501 U. S. 32, 47, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U. S. 197, 206, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1988); *see, e.g., Raleigh v. Illinois Dept. of Revenue*, 530 U. S. 15, 24-25, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000); *United States v. Noland*, 517 U. S. 535, 543, 116 S. Ct. 1524, 134 L. Ed. 2d 748 (1996); *SEC v. United States Realty & Improvement Co.*, 310 U. S. 434, 455, 60 S. Ct. 1044, 84 L. Ed. 1293 (1940).

As addressed below, Defendant's attempt to use 11 U.S.C. § 523(d) as a cover or excuse to be paid attorney's fees is meritless and flies in the face of well established authority from the federal appellate courts.

F.    "The fees sought demonstrate billing judgment and are identified with

sufficient specificity to allow the Court to exercise the broad discretion vested in it under 11 U.S.C. §523(d)." *Id.* at p. 4:2-4.

G.   Adequate time was available to correct the trial exhibits and Plaintiff's Counsel's claims that they did not know they could correct the trial binders is unsupported by the court's pre-trial order and the docket. *Id.* at p. 4:11-14.

H.   Plaintiff's conduct supports a determination of abuse of the litigation process. *Id.* at p. 5:3-4.

I.   The right to seek fees was not abandoned because Defendant identified their was no contractual basis for a fee award, but the answer to the First Amended Complaint set out a demand for attorney's fees. *Id.* at p. 5:22-28.

J.   Prevailing party attorney's fees can be awarded under 11 U.S.C. § 105(a) when another party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* at p. 6:1-7.

K.   Plaintiff continues to spread misinformation. *Id.* at p. 6:12-20.

L.   Fees are consistent with market values. *Id.* at p. 7:5-14.

**Defendant's Attorney's Supplemental Declaration**

On March 10, 2022, Defendant's Attorney filed a Supplemental Declaration in support of the Reply repeating much of the previous arguments. Dckt. 321.

Defendant's Attorney also includes statements, as personal knowledge testimony under penalty of perjury, which clearly are not based on personal knowledge, but are rather statements requiring speculation of Defendant's Attorney or her personal legal conclusions to be accepted by the court:

A.   "The materials that were produced by Messrs. Black and Lazzarini were produced with their actual knowledge . . ." Declaration, Dckt. 321 at p. 2:4-7.

B.   ". . . they did not fulfil [*sic*] that statutory obligation and produced those materials knowing that they were burdensome and were not responsive to the request for production." *Id.* at p. 3:13-15.

C.   " . . . they knew or should have known that substantially none of the produced materials were responsive to the request for document production . . ." *Id.* at p. 4:8-9.

D.   "The conduct by Messrs. Black and Lazzarini were intended to and did increase the costs of the defense of the litigation." *Id.* at p. 5:16-17.

These statements/legal conclusions provided by Defendant's Attorney in her Supplemental

19

Declaration offer little of evidentiary value, and demonstrate the long, dark hole of litigation maneuvering by Defendant and Defendant's Attorney in response to the litigation maneuvering by Plaintiff and Plaintiff's Counsel.  However, the court considers them as part of Defendant's Attorney's arguments.

**Additional Exhibits in Support of Defendant's Response**

On March 10, 2022, Defendant filed the following Supplemental Exhibits in support of their response:

1.    Redacted emails.

2.    3rd Amended Notice of Deposition & Request for Document Production to Dominique Black.

3.    Email from Mr. Lazzarini to Ms. Gropper Nelson dated May 14, 2021.

Dckt. 323-325.

**APPLICABLE LAW**

**Prevailing Party and Attorneys's Fees**

The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides.  Costs against the United States, its officers and agencies shall be imposed only to the extent permitted by law.  Costs may be taxed by the clerk on 14 days' notice; on motion served within seven days thereafter, the action of the clerk may be reviewed by the court. *Fed. R. Bank. P.* 7054(b)(1).

Attorney's fees and costs, if any, must be requested as provided by Federal Rule of Civil Procedure 54 and Federal Rules of Bankruptcy Procedure 7054 and 9014.  Furthermore, a claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages. *Fed. R. Civ. P.* 54(d)(2)(A); *Fed R. Bankr. P.* 7054.  Federal Rule of Civil Procedure 54(d)(2)(B)(ii) governs motions for attorney's fees. *Collier on Bankruptcy* discusses the requirements for prevailing party attorney's fees:

> Civil Rule 54(d)(2)(B)(ii) requires the motion to specify the judgment, as well as any statute, rule, or other grounds that would entitle the movant to the award. This conforms to the standard in the United States, known as the 'American Rule' that individual attorney's fees are, without a statute, contract, or special circumstances stating otherwise, the responsibility of the litigants who hire those attorneys.

20

10 Collier on Bankruptcy P 7054.06 (16th 2021).

Under the American Rule, the prevailing party in a lawsuit does not collect attorney's fees absent contractual or statutory authorization. *International Union of P.I.W. v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). A prevailing party need not achieve all of the relief claimed, but merely some of the benefit the parties sought in bringing the suit. *Park, ex rel. Park v. Anaheim Union High School Dist.*, 464 F.3d 1025, 1035 (9th Cir. 2006). Additionally, this generous formulation brings the plaintiff only across the statutory threshold and remains for the district court to determine what fee is "reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In the Ninth Circuit, the customary method for determining the reasonableness of a professional's fees is the "Lodestar Calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), amended, 108 F.3d 981 (9th Cir. 1997). Additionally, California courts use the Lodestar method. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133-36 (2001); *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977).

"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d at 363 (citation omitted). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. at 433. An attorney's fee award based on the lodestar is a presumptively reasonable fee. *In re Manoa Fin. Co.*, 853 F.2d 687, 691 (9th Cir. 1988).

The Lodestar method may be adjusted based on factors including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchem*, 24 Cal. 4th at 1132.

In rare or exceptional instances, if the court determines that the Lodestar figure is unreasonably low or high, it may adjust the figure upward or downward based on certain factors. *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620 n.4 (9th Cir. 1987). Therefore, the court has considerable discretion in determining the reasonableness of a professional's fees. *Gates v. Duekmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Having this discretion is appropriate "in view

of the [court's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437.

A trial court can reduce attorney's fees when a party achieves limited success. *See, Save Our Uniquely Rural Cmty. Env't v. Cty. of San Bernardino*, 235 Cal. App. 4th 1179, 1185 (2015). "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. at 440. Where a plaintiff achieved limited success, the district court awards fees that are reasonable to the results obtained. *Id*. The *Hensley* court adopted the following analysis which California courts follow:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart*, 461 U.S. at 440; *See also Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) ("If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court 'should award only that amount of fees that is reasonable in relation to the results obtained.'" (quoting *Hensley* 461 U.S. at 440)). Therefore, if a party fails on one claim that is completely distinct from any claims plaintiff prevailed on, the hours expended should be excluded from the final fees awarded. Additionally, if a party achieved limited success on a claim, the district court shall award only a reasonable amount of fees for the time expended.

**Defendant's Assertion 11 U.S.C. § 523(d) is a Basis for Attorney's Fees For This State Court Judgment Arising Out of Debtor's Business is Incorrect**

The statutory basis for the requested prevailing party attorneys' fees is 11 U.S.C. § 523(d), which provides (emphasis added):

> (d) If a creditor requests a **determination of dischargeability of a consumer debt** under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if

special circumstances would make the award unjust.

This legal basis for asserting that 11 U.S.C. § 523(d) is proper legal authority for the court awarding Defendant attorney's fees is made with the certification by Defendant and Defendant's Attorney that such award of attorney's fees is "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr. P. 9011(b)(2).

Collier on Bankruptcy has a succinct discussion of this point, stating that fees are recoverable pursuant to 11 U.S.C. § 523(d) as follows (emphasis added):

> Generally, to prevail on a motion for attorney's fees under section 523(d), the debtor must prove that the creditor brought a dischargeability complaint **with respect to a consumer debt** and that the debt was discharged; the creditor in such a case can defeat the motion by establishing that its nondischargeability action had a reasonable basis in law and fact, or that there were special circumstances.[2]

2. *In re Harvey*, 32 C.B.C.2d 164, 172 B.R. 314 (B.A.P. 9th Cir. 1994).

4 Collier on Bankruptcy, ¶ 523.30 (16th Edition). The recovery of fees through 11 U.S.C. § 523(d) is discussed in greater depth by Collier, which states:

> To prevail on a motion for costs and attorney fees under section 523(d), a debtor must establish:
>
> •      The creditor requested a determination of the dischargeability of the debt under section 523(a)(2);
>
> •      The debt is a consumer debt; and
>
> •      The debt was discharged.
>
> If the debtor establishes these three elements, the burden then shifts to the creditor to prove either that its position was substantially justified or that special circumstances exist that would make an award of costs and attorney fees unjust.

*Id*., ¶ 523.08, also citing to *In re Harvey*.

The Ninth Circuit Bankruptcy Appellate Panel decision *American Savings Bank v. Harvey (In re Harvey)*, 172 B.R. 314, 317 (B.A.P. 9th Cir. 1994), which includes the following (emphasis added):

> In order to prevail on a motion for attorney's fees under § 523(d), a **debtor must prove** that:
> (1) the creditor requested a determination of the dischargeability of the debt, **(2) the debt is a consumer debt**, and (3) the debt was discharged. *In re Kullgren*, 109 Bankr. 949, 953 (Bankr. C.D. Cal.

1    1990).

2    *FCC Nat. Bank v. Dobbins*, 151 Bankr. 509, 511 (W.D. Mo. 1992). Once the **debtor**

3    **establishes these elements**, the burden shifts to the creditor to prove that its actions
     were substantially justified. *Id.* at 511 (citing *In re Rhodes*, 93 Bankr. 622, 624

4    (Bankr. S.D. Ill. 1988)).

5    The three elements set forth in *FCC Nat. Bank* have been satisfied in this case.
     American Savings filed a dischargeability complaint, **which involved consumer**

6    **debts** incurred on a credit card. Further, the Debtor prevailed at trial.

7    The term "consumer debt" is defined in 11 U.S.C. § 101(8) as: "(8) The term 'consumer

8    debt' means debt incurred by an individual primarily for a personal, family, or household purpose."

9    The plain language of the statute, 11 U.S.C. § 101(8) clearly states that the debt must have been

10   incurred for either:

11           1.      A personal purpose;

12           2.      A family purpose; or

13           3.      A household purpose.

14   Here, the "debt" at issue is the State Court Judgment awarded Plaintiff against the late

15   Debtor (for who the Defendant is the successor representative in the late Debtor's bankruptcy case

16   and this Adversary Proceeding) for an obligation asserted to arise from the late Debtor's business,

17   for failure of Defendant to provide the work in renovating the motor home in Defendant's and

18   others' related businesses. It was asserted that Defendant's business and other businesses failed to

19   properly renovate Plaintiff's motor vehicle.

20   The State Court Judgment is for obligations asserted to arise from the late Debtor's business

21   operations. The Plaintiff is not asserting claims for residential rent, nor personal clothing purchases,

22   nor buying gifts for the family, nor personal/family medical expenses and the like. The debt now

23   ensconced in the State Court Judgment is for claims arising out of the late Debtor's commercial

24   business operation – the late Debtor's failure to perform contractual duties relating to his business,

25   and not debt incurred for a personal, family, or household purpose.

26   Defendant admits to this shortcoming, stating in their Response (Dckt. 317) (emphasis

27   added), "The fee motion identified and recognizes **the difficulty presented by 11 U.S.C. §523(d)**

28   **and the rubric of 'consumer debt'**" (page 8 lines 2-4) and recognizing a **"difficulty to label the**

1   **claim as a 'consumer' debt**" (page 3 lines 23-25).  At numerous times, Defendant mentions a

2   "broad discretion" the court has to award fees "in a case like this."

3          The "difficulty presented by 11 U.S.C. § 523(d)" appears to be the difficulty that the plain

4   language of the statute offers no support to Defendant's contention that the court should consider

5   a debt arising out of the late Debtor's commercial business operation as a personal, family, or

6   household debt.  Defendant could not muster any argument that the debt at issue, the State Court

7   Judgment, was based on a consumer debt.  Such an assertion by Defendant is meritless.

8          What Defendant could muster as an argument is that Defendant believes this court should

9   be wildly offended by Plaintiff's actions, and therefore, this court should use broad discretion to

10  rewrite the plain language of 11 U.S.C. § 523(d) to allow the court to penalize Plaintiff and cause

11  Plaintiff to forfeit monies to Defendant.  Defendant cites no authority giving the court discretion to

12  "wave its judicial wand" and create law beyond what Congress plainly and clearly stated in

13  11 U.S.C. § 523(d).  As addressed above, such runs contrary to well established federal appellate

14  court decisions, including multiple decisions of the United States Supreme Court. Defendant offers

15  no basis for the court to add additional provisions to 11 U.S.C. § 523(d), usurping the Constitutional

16  powers of Congress and the President of the United States.

17         The court, in following with the plain language provided by Congress, concludes that

18  Defendant's assertion that 11 U.S.C. § 523(d) can be extended for litigation not relating to a

19  consumer debt of a debtor is without merit.

20
21  **Defendant's Assertion that Court Should Order**
    **Payment of Attorney's Fees Pursuant to *11 U.S.C. § 105(a)***

22         A request for an order of contempt by a debtor, United States Trustee, or another party in

23  interest is made by motion governed by Federal Rule of Bankruptcy Procedure 9014.  FED. R.

24  BANKR. P. 9020.  Under Section 105(a), "[t]he court may issue any order . . . necessary or

25  appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) grants the court its inherent

26  sanctioning power.  A bankruptcy judge has the authority to issue a civil contempt order. *Caldwell*

27  *v. Unified Capital Corp. (In re Rainbow Magazine)*, 77 F.3d 278, 283–85 (9th Cir. 1996).

28         Defendant asserts that prevailing party fees under 11 U.S.C. § 105(a) are warranted.

25

Defendant directs the court to *In re Schwartz Tallard*, 473 B.R. 340 (B.A.P. 9th Cir. 2012), aff'd, 751 F.3d 966 (9th Cir. 2014), opinion withdrawn and superseded, 765 F.3d 1096 (9th Cir. 2014), on reh'g *en banc*, 803 F.3d 1095 (9th Cir. 2015), and aff'd, 765 F.3d 1096 (9th Cir. 2014), and on reh'g *en banc*, 803 F.3d 1095 (9th Cir. 2015), and aff'd, 803 F.3d 1095 (9th Cir. 2015).  Thus, the Bankruptcy Appellate Panel decision cited by Defendant has been replaced by a Circuit Court of Appeal decision, which is based on 11 U.S.C. § 362(k) and not the grounds asserted by Defendant for this Motion.

In *Schwartz*, the Bankruptcy Appellate Panel did discuss that a court "may award a prevailing party attorneys' fees when another party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 347 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991)).  This authority is granted under the court's inherent sanctioning power.  *Chambers,* 501 U.S. at 33.

10 Moore's Federal Practice - Civil § 54.171 (2021) (citing *Chambers*, 501 U.S. at 43-51); *see also Alyeska Pipeline Serv. Co. V. Wilderness Society*, 421 U.S. 240, 258-59 (1975), discusses this principle of law, stating:

> When a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons," the court may employ its inherent equitable powers to award attorney's fees as sanctions. Such a fee award is permissible under the bad faith exception to the American Rule, and its purpose is to compensate the wronged party, punish the wrongdoer, and protect the integrity of the court.

This exception only applies to bad faith relating to conduct in the litigation.  *Association of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541, 549 (9th Cir. 1992).  However, the prevailing party's bad faith may also serve as a ground for denying costs or attorney's fees to which the prevailing party would be otherwise entitled.

Reading the Supreme Court decision upon which this principle is based, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 45-46, 50 (1991), the exercise of this power to sanction is stated as (emphasis added):

> For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 19 U.S. 204, 6 Wheat. 204, 227, 5 L. Ed. 242 (1821); see also *Ex parte Robinson*, 86 U.S. 505, 19 Wall. 505, 510, 22 L. Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.*

*Co.*, 370 U.S. 626, 630-631, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962).
. . .

Because of their very potency, inherent powers must be exercised with restraint and discretion. *See Roadway Express*, *supra*, at 764. **A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.** As we recognized in *Roadway Express*, outright dismissal of a lawsuit, which we had upheld in *Link*, is a particularly severe sanction, yet is within the court's discretion. 447 U.S. at 765. Consequently, the "less severe sanction" of an assessment of attorney's fees is undoubtedly within a court's inherent power as well. *Ibid. See also Hutto v. Finney*, 437 U.S. 678, 689, n. 14, 57 L. Ed. 2d 522, 98 S. Ct. 2565 (1978).

Indeed, "there are ample grounds for recognizing . . . that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel," *Roadway Express, supra*, at 765, even though the so-called "American Rule" prohibits fee shifting in most cases. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259, 44 L. Ed. 2d 141, 95 S. Ct. 1612 (1975). As we explained in *Alyeska*, these exceptions fall into three categories. The first, known as the "common fund exception," derives not from a court's power to control litigants, but from its historic equity jurisdiction, *see Sprague v. Ticonic National Bank*, 307 U.S. 161, 164, 83 L. Ed. 1184, 59 S. Ct. 777 (1939), and allows a court to award attorney's fees to a party whose litigation efforts directly benefit others. *Alyeska*, 421 U.S. at 257-258. Second, a court may assess attorney's fees as a sanction for the "'willful disobedience of a court order.'" *Id.*, at 258 (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 18 L. Ed. 2d 475, 87 S. Ct. 1404 (1967)). Thus, a court's discretion to determine "the degree of punishment for contempt" permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation. *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 428, 67 L. Ed. 719, 43 S. Ct. 458 (1923).

Third, and most relevant here, a court may assess attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska, supra*, at 258-259 (quoting *F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 40 L. Ed. 2d 703, 94 S. Ct. 2157 (1974)). *See also Hall v. Cole*, 412 U.S. 1, 5, 36 L. Ed. 2d 702, 93 S. Ct. 1943 (1973); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, n. 4, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968) (*per curiam*). In this regard, **if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party,** *Universal Oil*, *supra*, at 580, **as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order**," *Hutto*, 437 U.S. at 689, n. 14. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Ibid.*
. . .

But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules. A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees, *see Roadway Express, supra*, at 767. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed

discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

There is no quarrel that this federal court has such inherent powers, in addition to what may be construed under 11 U.S.C. § 105(a) to "that is necessary or appropriate to carry out the provisions of this title." Though Defendant does not tie the request to provisions of Title 11, such does not limit this court's inherent power.

In reviewing the Defendant's Motion (Dckt. 260), Supplement to Motion (Dckt. 300), Points and Authorities (Dckt. 264), and Reply (317), Defendant provides the following grounds for the court awarding sanctions pursuant to 11 U.S.C. § 105(a) and the inherent power of the court:

A.    Reply, p. 6:3-12; Dckt. 317.

> The conduct by Messrs. Black and Lazzarini in continuing to pursue the adversary where they were in control and possession of the very evidence that they produced at trial was in bad faith. That "evidence" and their conduct in response to discovery support the fees as requested. All of the identified time was required to mount the defense that resulted in the judgment on all counts in favor of the successor representative. *Hensley v. Eckhart*, 461 U.S. 424 (1983).

B.    Supplement to Motion, p. 4:20-23; Dckt. 300.

> Throughout the underlying adversary action Dominique Black intended to and did increase the costs of litigation without regard for the burdens and costs that conduct would create. The Court was witness to that conduct throughout the five days of trial. (*Daggett v. Cardinale*, 280 B.R. 483, 495 (9th Cir. B.A.P. 2002) ).

While Defendant complains of Plaintiff's shortcoming and "devious" tactics, the court's observation is that Defendant gave "tit for tat," and that much of Defendant's litigation expenses are a result of Defendant's intentional litigation strategy. As discussed below, Defendant chose to not utilize available rights and remedies to address discovery disputes and perceived improper "gamesmanship" by an opponent. As experienced litigation counsel know, a judge's ruling on a discovery motion or two brings into line an attorney who thinks federal court litigation is a game where "anything goes, so long as the other side lets you get away with it."

There are many tools available to conduct discovery within the adversary through the Federal Rules of Civil Procedure (Fed. R. Civ. P. 28-37) as incorporated into the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. P. 7028-7037, 9014(c)). Rule 37 of the Federal Rules of

Civil Procedure (as incorporated by Federal Rule of Bankruptcy Procedure 7037) provides the procedure for the court to resolve discovery disputes. Under Federal Rules of Civil Procedure Rule 37, a party may move for an order compelling disclosure or discovery. The motion must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id*.

Federal Rules of Civil Procedure Rule 37(a)(3)(B) permits a party seeking discovery to move for an order compelling an answer, designation, production, or inspection, if a party fails to answer deposition question submitted under Federal Rules of Civil Procedure Rule 30 or 31, or fails to produce documents as requested under Federal Rules of Civil Procedure Rule 34.

The alleged bad faith, improper litigation conduct asserted by Defendant includes the following major items.

(1)     Production of 375 Pages of Late Documents

Defendant's Attorney's declaration in support of Defendant's Motion mentions 375 pages of late produced documents that were poorly labeled, in violation of Federal Rules of Civil Procedure 34 as incorporated in Federal Rules of Bankruptcy Procedure 7034. Dckt. 263 at p. 4:8-12. Defendant's Attorney states no motions to compel or protective orders were pursued as a need to keep costs of the defense down, <u>not</u> because there were no grounds to support such motions. *Id.* at p. 5:3-5.

The discovery proceedings are in place to ensure proper and efficient information sharing between parties. If one side fails to comply with discovery requests, the court can step in so long as there was good faith effort to obtain a response from the opposition, the attempted "meet and confer." The court's powers to compel a party to comply with discovery requests are for situations like the present case. If a party fails to comply with the Federal Rules, a court can compel them to produce relevant and organized documents to make document review easier for the propounding party and allow for more affective advocacy.

Motions to compel are not designed to be costly. If anything, filing a motion to compel in the case of a "document dump" is the most economically efficient option. An attorney can quickly file the motion and the court can order a party to comply with Rule 34 and produce untimely

documents in an organized manner. *See* Federal Rules of Civil Procedure 37(a); 34(b)(2)(E) as incorporated into Federal Rules of Bankruptcy Procedure 7037; 7034. A motion to compel could therefore save an attorney from billing countless hours.

Defendant's Attorney failed to employ this tactic and instead "sat on their hands" waiting to receive the documents and once received, asserts having racked up over $13,000.00 in attorney's fees by sorting through asserted poorly labeled and late produced documents. Additionally, Defendant's Attorney's denied Plaintiff's request for an extension, illustrating a possible failure to act in good faith in the "attempt to confer" with Plaintiff as required by Federal Rules of Civil Procedure 37(a)(1).

As there was no order compelling Plaintiff to comply with Federal Rules of Civil Procedure 34, Plaintiff never failed to comply with a court order. Only after Defendant wallowed in self-inflicted "discovery misery," went to trial, and amassed large legal fees, does Defendant seek to obtain a remedy for these past alleged "sins" which were not addressed (and for which Defendant did not see warranting the filing of a simple discovery motion) when they were alleged to occur.

(2)     Production of 18,444 Pages of Documents from Insurance Company

For the same reasons above, Plaintiff never failed to comply with a court order regarding the production of these documents. Defendant's inaction in failing to seek court assistance in managing these 18,444 pages of documents shows to the court that this document dump was consensual. Defendant should not be awarded for the 17.75 hours billed while sorting through the documents when the court could have easily directed Plaintiff to reorganize the documents. Rather, Defendant billed their client over $8,000.00 in attorney's fees for what could possibly have been resolved in a simple motion.

Plaintiff has argued, and Plaintiff's counsel has testified, Insurance Litigation Documents were provided to Plaintiff in the same form and format as they had been produced by the insurance company. Plaintiff's Counsel further testifies that due to security settings on the electronic file he could not alter that file.

There was no order compelling Plaintiff to comply with Federal Rules of Civil Procedure 34, Plaintiff never failed to comply with a court order. There was no attempt by Defendant to address

1   any asserted defect or deficiency in the Insurance Litigation Documents presented.

2          (3)     Delayed Deposition and Behavior During Deposition

3          Deposition was postponed twice.  As explained in Plaintiff's opposition and testimony,

4   Plaintiff was exposed to COVID-19.  Opposition, p. 11:28 - p. 12:6; Dckt. 304.  This is a more than

5   reasonable reason to postpone a deposition, even on the eve of the proceeding.  Additionally,

6   Plaintiff states Defendant unilaterally cancelled Plaintiff's second scheduled deposition.  *Id.*  No

7   court order was requested by Defendant under Federal Rules of Civil Procedure 45 as incorporated

8   into Federal Rules of Bankruptcy Procedure 7045 to command Plaintiff's attendance of any

9   deposition.  The deposition was eventually completed, although much later than the originally

10  scheduled deposition.

11         With respect to Plaintiff's conduct during the deposition, a motion to compel could have

12  been used to compel an answer from a hostile deponent.  Federal Rules of Civil Procedure 37 as

13  incorporated into Federal Rules of Bankruptcy Procedure 7037.  This can even be done after

14  completing or adjourning the examination.  No such order was requested.  Although Defendant may

15  believe that the opposing party Plaintiff may have acted with hostility, the entire life of this case has

16  been hostile through actions of both parties.  Plaintiff's described actions do not amount to

17  prevailing fees under the bad faith exception.

18         Again, Defendant chose to take no action when the alleged wrongs are asserted to have

19  occurred.

20         (4)     Trial Binders

21         The court, like Defendant, found the trial binders provided by Plaintiff to be unsuitable for

22  any use in a federal court trial.  Many of the exhibits were duplicative and otherwise unnecessary

23  time was taken from trial to review the exhibits and determine their relevance.  Plaintiff's Counsel

24  admits to errors in preparing the trial binders.  Although Plaintiff's trial binder presented him as

25  unprepared, the court does not find Plaintiff acted in bad faith.  The court does not find it necessary

26  nor appropriate to award Defendant prevailing party fees because of Plaintiff's unorganized trial

27  binder, even if it caused delays in the proceedings.

28         It is no secret this proceeding has been riddled with questionable conduct from both parties.

31

Most recently, Defendant's Attorney improperly requesting attorney's fees through a Bill of Costs, rather than separate Motion as required by Federal Rules of Civil Procedure 54 as incorporated into Federal Rules of Civil Procedure 7054. *See* Dckt. 275. When the court pressed Defendant's Attorney for the legal authority existed for such slipping of attorney's fees in a Bill of Costs, Defendant's Attorney could offer none.

The court also observes that there were many shortcomings by Plaintiff and Plaintiff's counsel. As the court determined at trial, Plaintiff's testimony of "facts" he stated he "knew" and how he drew such conclusions was not credible. Plaintiff's presentation of his case appears to be a client driven, evidence presented as a client demanded, and a client "knowing" he has to be right and it is the attorney's job is to do that client's bidding.

Although Plaintiff and their Counsel may have acted questionably throughout the course of the litigation, their conduct does not rise to the level of "bad faith." The court views this in conjunction with considering the conduct and litigation strategy of Defendant and Defendant's Attorney. Defendant and Defendant's Attorney chose to ignore the conduct they now want to complain of, ignored and effectively waived their discovery rights, and chose to forgo the court promptly correcting any asserted improper conduct at the time it was relevant. Rather, Defendant demonstrates implementing a strategy that essentially was running up a huge legal bill while not wanting to "waste money" on filing a discovery motion to nip the alleged improper conduct in the bud. In substance, rather than exercising Defendant's rights and remedies, Defendant's strategy was to let legal fees purportedly pile up and then try to cash it in at the end of the litigation.

Defendant's strategy has been to deprive the court of an ability to impose an appropriate corrective sanction as discussed in *Chambers*:

> Because of their very potency, inherent powers must be exercised with restraint and discretion. *See Roadway Express, supra*, at 764. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process . . . ;

but instead leave the court with only a scorched earth, nuclear sanction – each and every legal fee that Defendant has incurred in this Adversary Proceeding without regard to the failure of Defendant to prosecute his rights and interests through discovery. *Chambers v. NASCO, Inc.*, 501 U.S. at 44-

32

45.

Defendant's strategy has been to maximize the attorney's fees sought to be recovered based upon inherent sanction powers of the court. Defendant's conduct is that it elected to "go with the flow" and sleep on Defendant's rights, apparently hoping to create an attorney's fees payday after trial if Defendant was successful.

Again, while Plaintiff and Plaintiff's counsel is questionable with respect to some of the complained of conduct, colorable explanations have been provided. Even more significantly, Defendant did not find such conduct, when it occurred, to warrant the simple filing of a motion, having the court address the issue, and avoiding the large amount of attorney's fees now sought.

Defendant's election to strip the court of the ability to issue an appropriate sanction to address asserted improper conduct, and instead to paint the court into the corner of only having the ability to issue sanctions of hundreds of thousands of dollars (or for whatever portion of the conduct the court concluded was improper) is itself conduct akin to acting in bad faith, vexatiously, wantonly, or for oppressive reasons. The court does not reward such conduct.

The court concludes there is no basis for imposing appropriate and proper sanctions under the inherent powers of the court and 11 U.S.C. § 105(a), to the extent applicable. The court does not find the conduct of Plaintiff and Plaintiff's Counsel (while questionable in some respects and possible examples of what not to do for a law school class) to be such which abuses the judicial process, tarnishes the court, and warrants punishing the alleged wrongdoer (Plaintiff or Plaintiff's Counsel) to protect the integrity of the court. Awarding Defendant hundreds of thousands of dollars would reward Defendant and Defendant's Attorney for not litigating their side of the case, not properly using the judicial system, and choosing a strategy for which they could allege being "forced" to incur the hundreds of thousands of dollars of legal fees they elected to "suffer."

**Required Lodestar Analysis
and Evidence**

Even if the court were to believe that imposing attorney's fees sanctions was proper, Defendant has chosen to ignore basic, well established Ninth Circuit law of what must be provided for a court to make an informed, intelligent determination of attorney's fees to be awarded.

33

1  Defendant's "strategy" in advancing this Motion is consistent with what appears to be Defendant's

2  litigation strategy - just ask for it, say it, argue it, do not do what is required, and do not do anything

3  to assert Defendant's right to manage or reduce litigation expenses. Then, have Defendant be

4  "highly offended" and demand to be paid for conduct that Defendant did not find improper enough

5  to exercise his rights and avoid running up huge legal fees.

6      As well established in the Ninth Circuit, whether for a prevailing party or professional in

7  a bankruptcy case, "the primary method" to determine whether a fee is reasonable is by using the

8  lodestar analysis. *Marguiles Law Firm, APLC v. Placide (In re Placide)*, 459 B.R. 64, 73 (B.A.P.

9  9th Cir. 2011) (citing *Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465, 1471 (9th Cir.

10 1983)). The lodestar analysis involves "multiplying the number of hours reasonably expended by

11 a reasonable hourly rate." *Id.* (citing *In re Yermakov*, 718 F.2d at 1471). Both the Ninth Circuit and

12 the Bankruptcy Appellate Panel have stated that departure from the lodestar analysis can be

13 appropriate, however. *See id.* (citing *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*

14 *(In re Puget Sound Plywood)*, 924 F.2d 955, 960, 961 (9th Cir. 1991) (holding that the lodestar

15 analysis is not mandated in all cases, thus allowing a court to employ alternative approaches when

16 appropriate); *Digesti & Peck v. Kitchen Factors, Inc. (In re Kitchen Factors, Inc.)*, 143 B.R. 560,

17 562 (B.A.P. 9th Cir. 1992) (stating that lodestar analysis is the primary method, but it is not the

18 exclusive method)).

19      Time and Billing Records

20      Pursuant to Federal Rules of Civil Procedure 54(d) as incorporated into Federal Rules of

21 Bankruptcy Procedure 7054, the Motion must specify the judgment entitling the movant to fees,

22 specify grounds for the fee award, and state or estimate the amount of the fees sought. Federal Rules

23 of Civil Procedure 54(d)(2)(B). Later evidentiary submissions can provide the factual proof of the

24 amount claimed. Pursuant to the United States Supreme Court, "the fee applicant bears the burden

25 of establishing entitlement to an award and documenting the appropriate hours expended and hourly

26 rates. The applicant … should maintain billing time records in a manner that will enable a reviewing

27 court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

28      Even if no opposition is filed, the court is required to review movant's evidentiary

submissions and reduce the fee request if submissions are insufficient. Every court of appeals has expressed a preference that documentation of the claimed hours be in the form of contemporaneously prepared time records. 10 Moore's Federal Practice - Civil § 54.155 (2021). Under the Ninth Circuit, lack of contemporaneous records does not justify an automatic reduction in the hours claimed, however, those hours should be credited only if reasonable under the circumstances and supported by other evidence, such as testimony or secondary. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) (citing *Johnson v. University College*, 706 F.2d 1205, 1207 (11th Cir. 1983) (prevailing party was able to substantiate prevailing party's fees claim by providing testimony based on diary entries and work product found in her files)).

This court finds helpful, and in most cases essential, for professionals to provide a basic task billing analysis for the services provided and fees charged, in addition to the actual billing records. This has long been required by the Office of the U.S. Trustee, and it is nothing new for professionals in this District. The task billing analysis requires only that the professional organize his or her task billing. The simpler the services provided, the easier it is for Applicant to quickly state the tasks. The more complicated and difficult to discern the tasks from the raw billing records, the more evident it is for Applicant to create the task billing analysis to provide the court, creditors, and U.S. Trustee with fair and proper disclosure of the services provided and fees being requested.

Additionally, the court finds it necessary for attorneys to provide their time and billing records so the court can see what legal services are asserted to be recoverable. Absent these records, the court has no ability to confirm whether the limited task billing provided is true, correct, reasonable, and awardable.

Here, Defendant merely states, "Contemporaneous time records are available for in camera review by the Court as the Plaintiff has filed a notice of appeal." Motion, Dckt. 260 at p. 2:12-13. However, Defendant has chosen to withhold these time and billing records from the court. Debtor's Attorney's rationale at the oral argument is that there were "attorney-client privileged matters" in the billings and in light of Plaintiff having filed an appeal, such should not be disclosed to Plaintiff. Defendant's Attorney suggested a process could be worked out where they could redact information,

obtain a protective order, allow Plaintiff's Counsel (who is not representing Plaintiff on the Appeal) to review them, but not disclose the records to Plaintiff.

Defendant's Attorney is experienced, certified, and has litigated in State and Federal Trial Courts, as well as in the State and Federal Appellate Courts. Such an attorney well knows that the billing records are necessary for a court to make an informed and intelligent decision as a request for attorney's fees. Such an experienced attorney knows not to put attorney-client privileged information in the billing records, but keep that for secure attorney-client communications. This is even more well known for attorneys experienced in bankruptcy proceedings – such as Defendant's Attorney – who know that such billing records must be filed, are open for review, and required when someone seeks attorney's fees.

What Defendant's Attorney chose to do instead was limit the information provided to the court with just lump sum attorney's fee figures for several task areas in the amounts of: (1) 27.50 hours billed for $13,062.50 in fees; (2) 63.25 hours billed for $30,043.75 in fees; (3) 17.75 hours billed for $8,431.25 in fees; (4) 17.75 hours billed for $8,431.25 in fees; (5) 300 hours billed for $142,500.00 billed; (6) 43 hours billed for $20,425.00 in fees; (7) 3 hours billed for $1,425.00 in fees.

These billing blocks total $224,318.75. However, in the Motion Defendant requests $275,000.00 in attorney's fees. Motion, p. 1:22-23; Dckt. 260. This may be the result of a miscomputation of the fees when an additional lump sum of $80,000.00 for fees and costs identified as those "[c]aused by Mr. Black and his tactics for which recover [sic] is not mandated by the costs bill or are not sought by this motion." Defendant's Attorney's Declaration, p. 8:10-12; Dckt. 263. The court addresses a separate ruling of Defendant's request for an additional $80,000.00 in sanctions.

Defendant's strategy, with his experienced $475.00 an hour billing rate attorney, is having Defendant's Attorney replace the court, make the required judicial determination that the actual services are reasonable and necessary, and give lump sum dollar amounts to be inserted into the order Defendant will hand to the court. There is little for the court to do, other than rubber stamp Defendant and Defendant's Attorneys findings and conclusions.

Defendant has chosen to not present the court with the necessary evidence for the court to make an informed, intelligent, proper award of attorney's fees and costs - if such were proper pursuant to this court's inherent powers or 11 U.S.C. § 105(a), to the extent applicable. This is a separate and independent basis for denying the request for hundreds of thousands of dollars in attorney's fees as sanctions, if such sanctions could properly be awarded.

As with Defendant's Attorney having no basis to present to the court as to why desired prevailing party attorney's fees of $275,000.00 were slipped into the Costs Bill as "Other costs," which are required to be itemized (as expressly stated on the Cost Bill next to the words "Other costs," Defendant's experienced attorney offers no credible explanation why the necessary billing records were not produced as part of the Motion. If the court were to look for conduct which assaulted the integrity of the court and an attempt to abuse the Federal Judicial Process, such a Bill of Cost including attorney's fees disguised as "Other costs," without merit asserting that 11 U.S.C. § 523(d) which applies only with respect to a consumer debt applies to all debts if the court so chooses to ignore the plain language of the statute, and excluding billing statements from this Motion for Prevailing Party Attorney's Fees would be near the top of the list.

The Motion is denied.

**Dated:** May 19, 2022

**By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*.  The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| Debtor(s) | Attorney for the Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Trustee** (if any) | Nicholas B. Lazzarini, Esq.<br>770 L Street, Ste. 950<br>Sacramento, CA 95814 |
| Sheila Gropper Nelson, Esq.<br>50 Osgood Place, 5th Floor<br>San Francisco, CA 94133 | |