1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re                                              )   Case No.  18-25001-E-7
                                                   )
JOSEPH H. AKINS,                                   )
                                                   )
                    Debtor.                        )
                                                   )
_____)
                                                   )
DOMINIQUE BLACK,                                   )   Adv. Proc. No.  18-2187
                                                   )   Docket Control No. RLF-21
                    Plaintiff,                     )
                                                   )
v.                                                 )
                                                   )
JOSEPH H. AKINS,                                   )
                                                   )
                    Defendant.                     )
_____)

**MEMORANDUM OPINION AND DECISION DENYING
DEFENDANT'S MOTION FOR SANCTIONS**

Joseph H. Akins, Jr. ("Defendant") filed the Motion for Sanctions ("Motion") seeking

sanctions in the amount of $81,818.75, citing to Local Rule 9017-1, 11 U.S.C. § 105(a) the inherent

powers of the court, and 28 U.S.C. § 1927.  Dckt. 267.  Defendant argues fees and costs were

incurred during the defense of the litigation due to the improper conduct and tactics undertaken by

Plaintiff and their Attorneys.  Defendant points to Plaintiff's discovery and trial documents as

documentation of Plaintiff's bad faith.

This is in addition to the attorney's fees and sanctions that Defendant requested as the

prevailing party in a separate motion ("Prior Motion," DCN:20; Dckt. 260), citing 11 U.S.C.

§ 523(d), and 11 U.S.C. § 105(a) and the inherent powers of the court.  As addressed below, the

sanctions requested in the present Motion are included in the Prior Motion, which the court has

denied.  Memorandum Opinion and Decision and Order; Dckts. 341, 342.

**Court's February 3, 2022 Order**

On February 3, 2022, the court issued an order requesting a supplemental pleading to Defendant's Motion to state grounds with particularity upon which the relief if based (as required by Fed. R. Civ. P. 7(b) and Fed. R. Bankr. P. 7007). Dckt. 293. The court was concerned with the lack of grounds stated in Defendant's Motion, if the court tried to mine the supporting pleadings filed by Defendant in an attempt to state what grounds the court believed Defendant would want to state with particularity, such grounds could be inadvertently misstated.

**Defendant's Supplement Pleadings**

On February 14, 2022, Defendant filed a pleading titled "Supplemental Motion for Sanctions." Dckt. 302 (the "Supplement"). The court interprets this to be the "supplement to the [existing] Motion (not an amended motion) which states the grounds with particularity upon which the requested relief is based" as ordered by the court. Order, Dckt. 293.

In the supplement, Defendant states with particularity the grounds for this Motion for Sanctions:

A. Plaintiff intended and increased the costs of defense of litigation for litigant and the court through "evasive and argumentative" responses to discovery and at deposition, multiple cancellations of deposition dates on the eve of the dates, and the production of 18,444 pages of irrelevant, duplicate, and non-responsive document production. Supplement, p. 3:2-5; Dckt. 302.

B. Local Rule 9017-1 identifies a duty to not increase costs of litigation. *Id.* at p. 4:12-15. The court reviewed the local rules and although 9017-1 lays out rules the procedural rules for Alternate Direct Testimony, Exhibits, and Qualification of Expert Witnesses, the rule does not mention a duty to not increase costs of litigation.

C. 28 U.S.C. § 1927 supports sanctions because Plaintiff's Counsel reviewed the materials and still produced them, showing actual intent to harass, burden, and delay the proceedings. *Id.*, p. 4:23-27.

D. "[Plaintiff] engaged in numerous acts to increase the costs of litigation and to thwart discovery by [Defendant], identified in the supporting declarations and other papers previously filed with the Court." *Id.*, p. 3:1-2.

E. "A portion of the sanctions sought relate to the time prior to and during trial that was required to deal with all of the redundant and irrelevant materials produced by Mr. Black, as exhibits and document production. The identification of those materials, through counsel, were produced solely to increase the cost of litigation. That is obvious from the content of the

1    materials; and was admitted in the statements made by Mr. Black's counsel in both the May 11 and 14, 2021 emails identifying that he had reviewed the 18,444 pages before production them and in his Omnibus Opposition to the limine motions and during oral argument at trial where he admitted that there had been no due diligence in the production of plaintiff's exhibits. (Doc No 233 Omnibus Opposition to Motions in Limine)." *Id.*, p. 3:10-17.

F.    "Because of Plaintiff's inclusion of irrelevant, redundant and duplicate exhibits and evasive testimony by Mr. Black trial did not conclude until December 6, 2021 taking up 5 calendar days." *Id.*, p. 3:7-9.

G.    "A portion of the sanctions sought relate to the time prior to and during trial that was required to deal with all of the redundant and irrelevant materials produced by Mr. Black, as exhibits and document production. The identification of those materials, through counsel, were produced solely to increase the cost of litigation." *Id.*, p. 3:10-13.

H.    "The Court made oral findings from the bench on December 6, 2021 finding that Mr. Black had not met his burden of proof as to all causes of action, and finding that Mr. Black lacked credibility." *Id.*, p. 3:27 - p. 4:1.

Defendant continues in the Argument section of the Supplement to state the following legal grounds for the requested relief.

A.    "Sanctions are sought under Local Rule 9017-1 which identifies a duty not to increase the costs of litigation. " *Id.*, p. 4:13-14.

B.    "The duty owed is to all who come before the court, including the opposition, to not unnecessarily increase the costs and burdens of litigation." *Id.*, p. 4:16-17.

C.    "28 U.S.C. §1927 supports the imposition of sanctions, jointly and severally, as against a client and counsel, where the complained of conduct can be identified as having been joint and several." *Id.* p. 4:24-25.

D.    "[T]he conduct complained of directly required and was undertaken by [Plaintiff's] counsel on behalf of [Plaintiff]." *Id.*, p. 5:25-26.

E.    "11 U.S.C. § 105(a) provides the Court with the inherent discretion to protect the judicial process. The award of sanctions sought through this Supplemental Motion are intended to deter the conduct by Mr. Black, aided and abetted through his counsel; conduct which abused this Court's time and resources as well as increasing the costs to defend the litigation." *Id.*, p. 6:8-11.

**Defendant's Declaration**

On January 28, 2022, Defendant filed a Successor Representative Declaration in Support of Motion for Sanctions (" Declaration"). Dckt. 269. Defendant's seven (7) page Declaration contains many factual assertions including:

A.    Defendant has incurred increased costs to defend the litigation as a result of

1    Plaintiff.

2    B.    Defendant assisted their counsel in reviewing document production.

3    C.    Defendant attended Plaintiff's deposition and witnessed Plaintiff's contested
            behavior.

4

5    D.    Defendant's Counsel did not pursue motions to avoid costs of litigation.

6    Defendant also includes statements that are not based on personal knowledge, but rather are

7    statements that appear in part to be speculation by Defendant and Defendant's Attorney, and also

8    are legal contentions, not appropriate as a lay witness testimony under penalty of perjury:

9    A.    "I know the information set forth herein of my own personal knowledge
            unless set forth on information and belief and as to that information I believe

10          it to be true."  Declaration, p. 1:23-25; Dckt. 269.

11   With this statement, Defendant is telling the court that some of what is in his Declaration is his

12   personal knowledge, as required by Federal Rule of Evidence 601 and 602, but some of it is only

13   based on information and belief.  The personal knowledge testimony and the information and belief

14   testimony are not identified.

15   B.    "[I]t is clear to me that he intended to increase my costs to defend the
            litigation to increase the burden of litigation to harass me into settling." *Id.*,

16          p. 2:6-8.

17   While this may be Defendant's factual or legal conclusion, arguing why he should be awarded

18   sanctions, it is not personal knowledge testimony of a fact or event.

19

20   C.    "I believe that it was the actual intent of [Plaintiff] and his attorneys to
            increase those costs. . . ." *Id.*, p. 2:12-14.

21   This is not personal knowledge testimony as required by Federal Rules of Evidence 601, 602.

22

23   D.    "If they had reviewed those materials they knew that the materials were
            substantially irrelevant . . ." *Id.*, p. 3:17-18.

24   No basis for Defendant providing a legal opinion concerning "professional diligence" or his

25   conclusion that Plaintiff's Counsel could prospectively conclude that Plaintiff's claims lacked merit.

26   E.    "[H]e intended to increase my costs to defend . . ." *Id.*, p. 3:20-21.

27   This is Defendant's argument, not personal knowledge testimony as required by Federal Rules of

28   Evidence 601, 602.

F.      "That I was able to assist in that manner does not diminish the appropriateness of issuing sanctions . . ." *Id.*, pp. 3:26 - 4:1.

This is Defendant's argument, not personal knowledge testimony as required by Federal Rules of Evidence 601, 602.

G.      "Though I have no evidence to support this statement . . ." *Id.*, p. 5:8.

This documents that Defendant's testimony in this portion of his testimony is not based on facts, but his conclusions.

H.      "That conduct . . . was intentional and deliberate." *Id.*, p. 5:15-16.

This is Defendant's argument, not personal knowledge testimony as required by Federal Rules of Evidence 601, 602.

I.      "I am confirmed in my belief that all the conduct was intended to increase my burden . . ." *Id.*, p. 5:26.

This is Defendant's argument, not personal knowledge testimony as required by Federal Rules of Evidence 601, 602.

J.      "I believe [Plaintiff] will continue to abuse the judicial process . . ." *Id.*, p. 6:4-6.

This is Defendant's argument, not personal knowledge testimony as required by Federal Rules of Evidence 601, 602.

The court has been presented with a declaration in which the witness provides some identified portion of the testimony based only on "information and belief." That Declaration is the testimony of a witness presented in writing in lieu of the witness being put on the stand. Non-expert witness testimony must be based on the personal knowledge of the witness. Fed. R. Evid. 602. As discussed in Weinstein's Federal Evidence § 602.02:

A witness may testify only about matters on which he or she has first-hand knowledge. Because most knowledge is inferential, personal knowledge includes opinions and inferences grounded in observations or other first-hand experiences. The witness's testimony must be based on events perceived by the witness through one of the five senses.

Recently, the Ninth Circuit Court of Appeal addressed this personal knowledge issue, stating:

Under Rule 602, "[a] witness may testify to a matter only if evidence

5

is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. Rule 602 requires any witness to have sufficient memory of the events such that she is not forced to 'fill[] the gaps in her memory with hearsay or speculation.' 27 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE Evidence § 6023 (2d ed. 2007). Witnesses are not 'permitted to speculate, guess, or voice suspicions.' *Id.* § 6026. However, '[p]ersonal knowledge includes opinions and inferences grounded in observations and experience.' *Great Am. Assurance Co. v. Liberty Surplus Ins. Co.*, 669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009) (citing *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999)). Lay witnesses may testify about inferences pursuant to Rule 701:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

*United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015).

As discussed in Moore's Federal Practice, Civil § 8.04, the use of "information and belief" is a pleading device for the use in a complaint (or motion) to allow a plaintiff (or movant) to fill in the gaps of alleging a claim pending discovery.

[4] Allegations Supporting Claims for Relief May Be Made on Information and Belief

Rule 8 does not expressly permit statements supporting claims for relief to be made on information and belief (see § 8.06[5]). However, Rule 11 permits a pleader, after reasonable inquiry, to set forth allegations that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" (see Ch. 11, Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions). Courts have read the policy underlying Rule 8, together with Rule 11, to permit claimants to aver facts that they believe to be true, but that lack evidentiary support at the time of pleading. Generally, however, such averments are allowed only when the facts that would support the allegations are solely within the defendant's knowledge or control.

Nothing in the *Twombly* plausibility standard (see [1], above) prevents a plaintiff from pleading on information and belief. A pleading is sufficient if the pleading as a whole, including any allegations on information and belief, states a plausible claim. On the other hand, if the pleading fails to permit a plausible inference of wrongdoing, or if the allegations are nothing more than legal conclusions, the pleading will not survive a motion to dismiss.

This is incorporated to Federal Rule of Bankruptcy Procedure 9011, which repeats the provisions

of Federal Rule of Civil Procedure 11(b), stating:

> (b) Representations to the court.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]—
>
>> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>>
>> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Though allowed as a pleading device, the certification required by 28 U.S.C. § 1746 does not allow testimony in declaration to be provided under penalty of perjury being true because the witness merely "is informed and believes [or desires because likely it would mean the witness party would prevail] it is true."

The objectionable statements in Defendant's Declaration will not be taken into consideration by the court.

**Defendant's Attorney's Declaration**

Defendant's Attorney submitted an eleven (11) page declaration titled Counsel's Declaration in Support of Motion for Sanctions ("Defendant's Attorney's Declaration") on January 28, 2022, largely reaffirming many of the grounds already listed in Defendant's Motion and Declaration. Dckt. 270. Defendant's Attorney also mentions contemporaneous time entries were maintained from the petition date to the present time.  Defendant's Attorney's Declaration, Dckt. 270 at p. 3:6. However, those billing records are not provided in support of this Motion.

Additionally, Defendant's Attorney provides a summary of increased time spent litigating

the matter for which this award of sanctions is requested:[1]

**Review 375 Documents Produced** - Defendant's Attorney states they spent 27.50 hours reviewing 375 pages of poorly labeled documents that were produced 100-days late.

Sanctions Requested: 27.50 hours,
$475.00 hourly rate =
**$13,062.50**

Dckt. 270 at p. 4:3-4.

**Plaintiff's Deposition** - Defendant's Attorney states they spent 9.75 hours trying to get Plaintiff to appear at the deposition. Additionally, they spent 35 hours preparing and conducting for the deposition, including time spent preparing for cancelled depositions and 18.50 hours conducting the deposition.

Sanctions Requested: 63.25 hours,
$475.00 hourly rate =
**$30,043.75**

*Id.* at p. 4:15-16.

**Review of 18,444 Insurance Documents Produced** - Defendant's Attorney states they spent 17.5 hours going through 18,444 documents of "irrelevant and duplicate" material relating to Plaintiff's insurance company. Defendant's Attorney states motions to compel and/or motions for protective order were not filed because wanted to keep the costs of litigation down.

Sanctions Requested: 17.75 hours,
$475.00 hourly rate =
**$8,431.25**

*Id.* at p. 6:2-3.

**Plaintiff's Deposition Cancellations** - Defendant's Attorney states Plaintiff frequently cancelled scheduled depositions. Defendant's Attorney spent 17.75 hours preparing for each of the cancelled depositions and attendance of the September deposition.

Sanctions Requested: 17.75 hours,
$475.00 hourly rate =
**$8,431.25**

*Id.* at 6:17-18.

**Preparation for Trial** - Defendant's Attorney states they took 300 hours to prepare for their five (5) day trial. This equates to $142,500.00 billed. Defendant's Attorney

---

[1] Defendant's Attorney gave the court no billing records. The deficiencies and issues with not providing contemporaneous time records is addressed in this court's Memorandum Opinion and Decision denying Defendant's related Motion for Prevailing Party Fees; DCN RLF-20, Dckt. 341; incorporated herein by this reference, and as further addressed by the court below.

states this is exclusive of the motions in limine and objects to evidence and **some** of the time directed to the repetitive materials. It is concerning to the court that "some" of the time directed to the repetitive materials may be double billed. The court cannot confirm this, however, without billing statements that have not been provided to the court. However, it does not appear Defendant's Attorney is requesting sanctions for trial prep as the $81,818.75 figure is the sum of all the other categories, not including trial prep. *Id.* at p. 6.

**Motions in Limine** - Defendant's Attorney states it took **at least 39.5 hours** to research, draft, and file the motions in limine and objections to evidence. Again, Defendant's Attorney's billing records are of concern as she states "at least," instead of concretely giving a number. Defendant's Attorney additionally states it took 3.5 hours at trial and after the first day of trial to organize the exhibits.

> Sanctions Requested: 43 hours
> $475.00 hourly rate =
> **$20,425.00**

*Id.* at p. 7:10-11, 7:16-19.

**Duplicate Exhibits at Trial** - Defendant's Attorney states there was a "conservative estimate" of 3 hours of the courts time taken up by dealing with Plaintiff's exhibits.

> Sanctions Requested: 3 hours
> $475.00 hourly rate =
> **$1,425.00**

*Id.* at p. 8:4-5.

Defendant's Attorney states Defendant seeks sanctions in an **amount of not less than $81,818.75.** Dckt. 270 at p. 9:3-5.

**Defendant's Points and Authorities in Support of Motion**

Defendant filed their Points and Authorities in Support of Motion on January 28, 2022. Dckt. 271. The Points and Authorities largely reiterates the legal arguments stated above.

**PLAINTIFF'S OPPOSITION**
**AND SUPPORTING PLEADINGS**

**Plaintiff's Opposition**

Plaintiff filed an opposition on March 1, 2022, stating at no point did Plaintiff or their Counsel act with bad faith or with any intent to abuse the judicial process. Dckt. 308. Plaintiff states throughout the course of litigation, although certain interactions between the parties were heated, they still corresponded regularly, and navigated through issues and disagreements without court intervention. With respect to issues Defendant raises, Plaintiff states:

9

**Discovery Production of 375 Documents** - These documents were produced electronically and organized in document folders responsive to corresponding requests and were identified in written responses to Defendant's discovery requests. Additionally, although they were produced 100 days after the statutory deadline, Plaintiff attempted to receive a sixty day extension, which was denied by Defendant, but continued to correspond with Defendant and provide updates regarding the document production. Opposition, p. 4; Dckt. 308.

**Document Production of 18,444 Pages** - These 18,444 pages of documents comprised of Plaintiff's litigation file with their insurance company. Although the size was large, Defendant's Attorney requested Plaintiff produce all pages of documents. Additionally, they were produced in the same manner received by Plaintiff from their insurance company and included BATES numbering. Plaintiff provided the documents in thirty-five (35) PDF files, which were security protected by the insurance company making it difficult to separate out. Also. Defendant requested broadly any communications between Plaintiff and anyone relating to the vehicle since 1999. Since the dispute with Plaintiff's insurance spanned several years, there were hundreds of correspondences. *Id.*, pp. 5-7.

**Attorney Time Conducting Deposition** - Defendant's Attorney requests sanctions for 63.25 hours in connection with Plaintiff's 1.5 day deposition. Although Plaintiff's deposition was rescheduled twice, it was still conducted, and therefore he did not act with bad faith. Additionally, Plaintiff provides reasons for the rescheduling: (1) COVID-19 exposure and (2) **Defendant unilaterally rescheduling the second date of the deposition**. *Id.*, pp. 7-8.

**Trial Binders** - Although there were duplicates in Plaintiff's trial binder, Plaintiff's Counsel did so to ensure nothing would be left out of the exhibits when presenting their case. Additionally, Plaintiff was forced to use printing services not normally in the course of their business, which led to some errors that Plaintiff did not have time to correct before trial. *Id.*, pp. 8-10.

Declarations of Plaintiff's Counsel and Plaintiff have been filed under penalty of perjury in support of the opposition. The declarations do not state any portion is based on "information and belief." Dckts. 309, 310.

**Plaintiff's Declaration**

On March 1, 2022, Plaintiff filed a Declaration of Dominique Black in Support of Opposition to Supplemental Motion for Sanctions ("Plaintiff's Declaration"). Dckt. 310. Plaintiff's two (2) page declaration contains factual assertions including:

1. "At no time in this litigation did I take any action in bad faith, nor did I have any intent to abuse the judicial process or harass or unduly burden the Defendant or his counsel in this case. Declaration, p. 2:6-8; Dckt. 310.

Defendant may point to this as being a factual or legal conclusion. It is the witness stating what he believes he did. But it is for the court to make a conclusion as to whether the act or action taken was in bad faith or with an intent to abuse.

10

2.   "I brought this litigation in the good faith belief that I was defrauded by Defendant and his business associates and based on the judgment I had obtained in state court." *Id.*, p. 2:9-11.

3.   "I did not instruct my counsel to take any actions for the purposes of harassment nor to delay proceedings in this litigation." *Id.*, p. 2:12-13.

4.   "The 20,000 pages of documents referenced as the Fireman's Fund documents or the Insurance Litigation Documents were produced to me in the same manner and format as they were produced by my counsel to Defendant. Fireman's Fund created the PDF files. " *Id.*, p. 2:14-17.

5.   "In or about December 2020, prior to my scheduled deposition, I had a COVID exposure in my office. Due to my age and the age and health of my wife, I took extra quarantine precautions that required me to postpone my December deposition." *Id.*, p. 2:18-21.

6.   "I was prepared to attend my deposition on January 21, 2021 before it was unilaterally cancelled by Defendant." *Id.*, p. 2:22-23.

**Plaintiff's Counsel's Declaration**

On March 1, 2022, Plaintiff's Counsel filed a Declaration of Nicholas Lazzarini in Support of Opposition to Motion for Sanctions ("Plaintiff's Counsel's Declaration"). Dckt. 309. The declaration does not state that any portion of it is based on "information and belief." Plaintiff's Counsel's seven (7) page declaration contains many factual assertions including:

1.   "At no time in this litigation did I take any action in bad faith, nor did I have any intent to abuse the judicial process or harass or unduly burden the Defendant or his counsel in this case. This litigation was highly contentious with a great deal of personal animus between the parties." *Id.*, p. 2:7-11.

2.   "In or about October 2020, I began a series of meet and confer discussions with Defendant's counsel regarding Plaintiff's responses to Defendant's Requests for Production. Due to Plaintiff's records being kept off-site and under restricted access due to local COVID protocols and due to Plaintiff's work providing staffing and resources for bio-tech companies working on the COVID vaccine, Plaintiff was unable to produce documents by the response date for Defendant's document request." *Id.*, p. 2:12-18.

3.   "Plaintiff requested a sixty (60) day extension to provide written responses and all responsive documents, which Defense counsel denied. Counsel instead offered a 14-day extension, which was insufficient to provide the records under the circumstances during a peak period of the COVID-19 pandemic." *Id.*, p. 2:19-22.

4.   "Unable to meet the 14-day extension deadline, Plaintiff served written responses stating he had no documents in his possession at that time, but that documents would be provided as soon as possible." *Id.*, p. 2:23-25.

5.   "During this entire period between October 2020 and December 2020, I engaged in regular meet and confer correspondence with counsel for

Defendant and kept counsel updated on the status of production." *Id*., p. 2:25-28.

6.    "On or about December 28, 2020, Plaintiff served written, supplemental responses to Plaintiff's document requests including document production of approximately 375 pages." *Id.*, p. 3:1-3.

7.    "The documents consisted largely of invoices and payment records which were separated out into 'A' and 'B' folders each with a different file name including the date of the invoice on the Norcal Invoices." *Id.*, p. 3:12-14.

8.    "During meet and confer discussions between March 2021 and May 2021, Counsel for Defendant requested Plaintiff's Counsel identify and produce the 20,000 documents referenced by Plaintiff at his deposition (the "Insurance Litigation Documents")." *Id.*, p. 3:18-21.

9.    During the same time period, Defendant served their Motion for Summary Judgment interrupting the production of documents in order for Counsel to respond. *Id.*, p. 3:22-23.

10.    Defendant's Counsel reviewed the documents for privileged content and categorized them to correspond to Defendant's document requests. *Id.*, p. 3:28.

11.    "The Document requests included Request No. 15: 'Any and all writings which constitute, evidence, discuss, set forth, summarize or in any way relate to any and all communications between YOU and anyone relating to the VEHICLE from January 1, 1999 through to the present time, that YOU do not claim as privileged.'" *Id.*, p. 4:4-7.

12.    "The Insurance Litigation Documents also included pictures of the Vehicle, handwritten correspondence between Plaintiff, Mr. Tirpak, and Mr. Sarganis, and other highly relevant documents to this dispute. Many of the records in the Insurance Litigation Documents were used as trial exhibits by Plaintiff." *Id.*, p. 4:8-11.

13.    "When I received the Insurance Litigation Documents, they were divided into approximately 35 PDF files with pages sequentially numbered. [informed and believed sentence]  The files as produced to me contained security settings on the files that prevented deleting pages in the series or extracting pages. I was unable to remove any duplicate pages from the PDF files and instead was only able to sort and organize the files as responsive to Defendant's request by referencing the series of documents it was contained in. All documents were already sequentially BATES stamped with FFIC notation." *Id.*, p. 4:16-25.

14.    " On or about December 10, 2020, I emailed counsel for Defendant stating that Plaintiff would need to reschedule his December 18, 2020 deposition due to a potential COVID exposure." *Id*., p. 5:8-10.

15.    "On or about December 17, 2020, counsel for the parties agreed to reschedule Plaintiff's deposition to January 21, 2021." *Id*., p. 5:11-12.

16.    "On January 20, 2021, I emailed counsel for Defendant requesting log-in instructions for Plaintiff's remote deposition. Counsel for Defendant

12

responded the deposition would not go forward on January 21, 2021 and would be rescheduled. Prior to January 20, 2021, I received no notice from Defense Counsel the deposition was being postponed." *Id*., p. 4:13-17.

17. " Following Defendant's unilateral cancellation, the parties agreed to hold Plaintiff's deposition on March 29, 2021 and Plaintiff appeared on that date." *Id*., p. 5:18-19.

18. "In reviewing documents to prepare Plaintiff's trial binders in this action, I noticed there were several versions of the invoices and payment records. Some records contained handwritten notations that were either not present or not readily apparent on the original or copies of the records. I elected to be overinclusive in production of his trial exhibits so as not to be left missing any records when presenting Plaintiff's case at trial." *Id.*, p. 5:20-25.

19. "While preparing Plaintiff's trial binders, I was working alone in my office, with support staff and Plaintiff available only by remote means due to COVID-19 protocols." *Id.*, p. 5:26-28.

20. "I was and am in a high-risk demographic for complications that could arise from COVID." *Id*., p. 6:1-2.

21. Plaintiff's Counsel's efforts were further hindered by his inability to use his normal printing company. *Id*., p. 6:9-18.

22. After duplication of the trial binders Plaintiff's Counsel became aware of errors in the printing and page numbering, but did not have time to correct the issues before delivery to the Court. *Id*., p. 6:19-21.

23. Plaintiff's Counsel was unaware that amended trial binders would be allowed and had they known they would have brought corrected binders to the first day of trial. *Id*., p. 6:22-25.

24. Any conduct related to the trial binders was inadvertent and not intentional. *Id.*, p. 6:26-28.

25. "When the issue was raised by the Defendant at trial, the Court asked if I could fix the binders. With the help and hard work of support staff, my office made its best efforts to correct the errors, including hand delivering copies to Defense counsel's hotel room after hours." *Id.*, p. 7:1-4.

26. At no time in this litigation did I fail to respond to correspondence sent by Defendant's counsel." *Id.*, p. 7:9-10.

27. At no time did Plaintiff's Counsel take any action for the purpose of harassment or delay nor did they act with any intent to abuse the judicial process or disrespect the court. *Id.*, p. 7:11-12.

**Plaintiff's Exhibits**

Plaintiff supplied the court with exhibits in support of their opposition. Dckt. 311. The exhibits are the following:

1    Defendant's 3rd Amended Notice of Taking of Deposition & Request for

Document Production to Plaintiff.

2    Screenshot of Fireman's Fund Document Production

3    Dominique Black's Amended Second Supplemental Responses to First Set of Requests for Production

4    Screenshot of Document Production for First Set of Requests for Production

**DEFENDANT'S REPLY**

On March 8, 2022, Defendant filed a seven (7) page reply. Dckt. 319. Defendant repeated much of their previous arguments, asserting Plaintiff's conduct was intentional. Defendant's Attorney provides a declaration to support the reply (Dckt. 326) (repeating much of the previous arguments) and supplies the court with the following Exhibits (Dckts. 327-329):

A.    Portions of the 18,444 page digital production.

B.    3rd Amended Notice of Deposition of Dominique Black and Request for Document Production.

C.    Email from Plaintiff's Counsel producing the digital documents.

**LEGAL STANDARD**

**Defendant's Assertion that Court Should Order Sanctions Pursuant to *11 U.S.C. § 105(a)***

Under Section 105(a), "[t]he court may issue any order . . . necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) authorizes the court its inherent sanctioning power. A request for an order of contempt by a debtor, United States Trustee, or another party in interest is made by motion governed by Federal Rule of Bankruptcy Procedure 9014. FED. R. BANKR. P. 9020. A bankruptcy judge has the authority to issue a civil contempt order. *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine)*, 77 F.3d 278, 283–85 (9th Cir. 1996). 28 U.S.C. § 1927, any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

In reviewing the Defendant's Motion (Dckt. 267), Supplement to Motion (Dckt. 302), Points and Authorities (Dckt. 271), and Reply (319), Defendant provides the following legal bases and analyses for asserting that awarding sanctions pursuant to 11 U.S.C. § 105(a) and the inherent power

14

of the court:

A.     Reply, p. 2:16-19; Dckt. 319.

> The conduct by Mr. Black and [Plaintiff's] Counsel . . . were more than mere hindrance. The conduct was intentional. It was undertaken in bad faith and was intended to burden, and to increase the costs of the litigation.

B.     Supplement to Motion, p. 4:8-14; Dckt. 300.

> 11 U.S.C. §105(a) provides the Court with the inherent discretion to protect the judicial process. The award of sanctions sought by [the motion] are intended to deter the conduct evidenced by Mr. Black, aided and abetted through his counsel; conduct which abused this Court's time and resources as well as increasing the costs to defend the litigation.

> Throughout the underlying adversary action Dominique Black intended to and did increase the costs of litigation without regard for the burdens and costs that conduct would create. The Court was witness to that conduct throughout the [five] days of trial.

While Defendant complains of Plaintiff's shortcoming and "devious" tactics, the court's observation is that Defendant gave "tit for tat," and that much of Defendant's litigation expenses are a result of Defendant's intentional litigation strategy. As discussed below, Defendant chose to not utilize the rights and remedies available to Defendant and Defendant's Attorney to address discovery disputes and perceived improper "gamesmanship" by an opponent. As experienced litigation counsel know, a judge's ruling on a discovery motion or two brings into line an attorney who thinks Federal Court litigation is a game where "anything goes, so long as the other side lets you get away with it."

There are many tools available to conduct discovery within the adversary through the Federal Rules of Civil Procedure (Fed. R. Civ. P. 28-37) as incorporated into the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. P. 7028-7037, 9014(c)). Rule 37 of the Federal Rules of Civil Procedure (as incorporated by Federal Rule of Bankruptcy Procedure 7037) provides the procedure for the court to resolve discovery disputes. Under Federal Rules of Civil Procedure Rule 37, a party may move for an order compelling disclosure or discovery. The motion must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id*.

Federal Rule of Civil Procedure Rule 37(a)(3)(B) permits a party seeking discovery to move

1   for an order compelling an answer, designation, production, or inspection, if a party fails to answer
2   deposition question submitted under Federal Rules of Civil Procedure Rule 30 or 31, or fails to
3   produce documents as requested under Federal Rules of Civil Procedure Rule 34.

4        The alleged bad faith, improper litigation conduct asserted by Defendant includes the
5   following major items.

6        (1)      Production of 375 Pages of Late Documents

7        Defendant's Attorney's declaration in support of Defendant's Motion mentions 375 pages
8   of late produced documents that were poorly labeled, in violation of Federal Rules of Civil
9   Procedure 34 as incorporated in Federal Rules of Bankruptcy Procedure 7034. Dckt. 263 at p. 4:8-
10  12. Defendant's Attorney states no motions to compel or protective orders were pursued as a need
11  to keep costs of the defense down, <u>not</u> because there were no grounds to support such motions. *Id.*
12  at p. 5:3-5.

13       The discovery Rules and remedies are in place to ensure proper and efficient information
14  sharing between parties. If one side fails to comply with discovery requests, the court can step in
15  so long as there was good faith effort to obtain a response from the opposition, the attempted "meet
16  and confer." The court's powers to compel a party to comply with discovery requests are for
17  situations like the present case. If a party fails to comply with the Federal Rules, a court can compel
18  them to produce relevant and organized documents to make document review easier for the
19  propounding party and allow for more affective advocacy.

20       Motions to compel are not designed to be costly. If anything, filing a motion to compel in
21  the case of a "document dump" is the most economically efficient option. An attorney can quickly
22  file the motion and the court can order a party to comply with Rule 34 and produce untimely
23  documents in an organized manner. *See* Federal Rules of Civil Procedure 37(a); 34(b)(2)(E) as
24  incorporated into Federal Rules of Bankruptcy Procedure 7037; 7034. A motion to compel could
25  therefore save an attorney from billing countless hours.

26       Defendant's Attorney and Defendant failed to employ these remedies and instead "sat on
27  their hands" waiting to receive the documents and once received, assert having racked up over
28  $13,000.00 in attorney's fees by sorting through asserted poorly labeled and late produced

documents. Additionally, Defendant's Attorney's denied Plaintiff's request for an extension, illustrating a possible failure to act in good faith in the "attempt to confer" with Plaintiff as required by Federal Rules of Civil Procedure 37(a)(1).

As there was no order compelling Plaintiff to comply with Federal Rules of Civil Procedure 34, Plaintiff never failed to comply with a court order. Only after Defendant wallowed in self-inflicted "discovery misery," went to trial, and amassed large legal fees, does Defendant seek to obtain a remedy for these past alleged "sins" which were not addressed (and for which Defendant did not see warranting the filing of a simple discovery motion) when they were alleged to occur.

    (2)    <u>Production of 18,444 Pages of Documents from Insurance Company</u>

For the same reasons above, Plaintiff never failed to comply with a court order regarding the production of these documents. Defendant's inaction in failing to seek court assistance in managing these 18,444 pages of documents shows to the court that this document dump was consensual. Defendant should not be awarded for the 17.75 hours billed while sorting through the documents when the court could have easily directed Plaintiff to reorganize the documents. Rather, Defendant billed their client over $8,000.00 in attorney's fees for what could possibly have been resolved in a simple motion.

Plaintiff has argued, and Plaintiff's counsel has testified, Insurance Litigation Documents were provided to Plaintiff in the same form and format as they had been produced by the insurance company. Plaintiff's Counsel further testifies that due to security settings on the electronic file he could not alter that file.

There was no order compelling Plaintiff to comply with Federal Rules of Civil Procedure 34, Plaintiff never failed to comply with a court order. There was no attempt by Defendant to address any asserted defect or deficiency in the Insurance Litigation Documents presented.

    (3)    <u>Delayed Deposition and Behavior During Deposition</u>

The deposition of Plaintiff was postponed twice. As explained in Plaintiff's opposition and testimony, Plaintiff was exposed to COVID-19. Opposition, pp. 11:28 - 12:6; Dckt. 304. This is a more than reasonable reason to postpone a deposition, even on the eve of the proceeding. Additionally, Plaintiff states Defendant unilaterally cancelled Plaintiff's second scheduled

deposition. *Id.* No court order was requested by Defendant under Federal Rules of Civil Procedure 45 as incorporated into Federal Rules of Bankruptcy Procedure 7045 to command Plaintiff's attendance of any deposition. The deposition was eventually completed, although much later than the originally scheduled deposition.

With respect to Plaintiff's conduct during the deposition, a motion to compel could have been used to compel an answer from a hostile deponent. Federal Rules of Civil Procedure 37 as incorporated into Federal Rules of Bankruptcy Procedure 7037. This can even be done after completing or adjourning the examination. No such order was requested. Although Defendant may believe that the opposing party Plaintiff may have acted with hostility, the entire life of this case has been hostile through actions of both parties. Plaintiff's described actions do not amount to prevailing fees under the bad faith exception.

Again, Defendant chose to take no action when the alleged wrongs are asserted to have occurred.

(4)   Trial Binders

The court, like Defendant, found the trial binders provided by Plaintiff to be unsuitable for any use in a federal court trial. Many of the exhibits were duplicative and otherwise unnecessary time was taken from trial to review the exhibits and determine their relevance. Plaintiff's Counsel admits to errors in preparing the trial binders. Although Plaintiff's trial binder presented him as unprepared, the court does not find Plaintiff acted in bad faith. The court does not find it necessary nor appropriate to award Defendant prevailing party fees because of Plaintiff's unorganized trial binder, even if it caused delays in the proceedings.

It is no secret this proceeding has been riddled with questionable conduct from both parties. Most recently, Defendant's Attorney improperly requesting attorney's fees through a Bill of Costs, rather than separate Motion as required by Federal Rules of Civil Procedure 54 as incorporated into Federal Rules of Civil Procedure 7054. *See* Dckt. 275. When the court pressed Defendant's Attorney for the legal authority existed for such slipping of attorney's fees and desired sanctions in a Bill of Costs, Defendant's Attorney could offer none.

The court also observes that there were many shortcomings by Plaintiff and Plaintiff's

18

counsel.  As the court determined at trial, Plaintiff's testimony of "facts" he stated he "knew" and how he drew such conclusions was not credible.  Plaintiff's presentation of his case appears to be a client driven, evidence presented as a client demanded, and a client "knowing" he has to be right and it is the attorney's job is to do that client's bidding.

Although Plaintiff and their Counsel may have acted questionably throughout the course of the litigation, their conduct does not rise to the level of "bad faith."  The court views this in conjunction with considering the conduct and litigation strategy of Defendant and Defendant's Attorney.  Defendant and Defendant's Attorney chose to ignore the conduct they now want to complain of, ignored and effectively waived their discovery rights, and chose to forgo the court promptly correcting any asserted improper conduct at the time it was relevant.  Rather,  Defendant demonstrates implementing a strategy that essentially was running up a huge legal bill while not wanting to "waste money" on filing a discovery motion to nip the alleged improper conduct in the bud.  In substance, rather than exercising Defendant's rights and remedies, Defendant's strategy was to let legal fees purportedly pile up and then try to cash it in at the end of the litigation.

Defendant's strategy has been to deprive the court of an ability to impose an appropriate corrective sanction as discussed in *Chambers*:

> Because of their very potency, inherent powers must be exercised with restraint and discretion. *See Roadway Express, supra,* at 764. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process . . . ;

but instead leave the court with only a scorched earth, nuclear sanction – each and every legal fee that Defendant has incurred in this Adversary Proceeding without regard to the failure of Defendant to prosecute his rights and interests through discovery.  *Chambers v. NASCO, Inc.*, 501 U.S. at 44-45.

Defendant's strategy has been to maximize the attorney's fees billed and then sought to be recovered based upon inherent sanction powers of the court.  Defendant's conduct is that he elected to "go with the flow" and sleep on Defendant's rights, apparently hoping to create an attorney's fees "payday" after trial if Defendant was successful.

Again, while Plaintiff and Plaintiff's counsel is questionable with respect to some of the

complained of conduct, colorable explanations have been provided. Even more significantly, Defendant did not find such conduct, when it occurred, to warrant the simple filing of a motion, having the court address the issue, and avoiding the large amount of attorney's fees now sought.

Defendant's election to strip the court of the ability to issue an appropriate sanction to address asserted improper conduct, and instead to paint the court into the corner of only having the ability to issue sanctions of hundreds of thousands of dollars (or for whatever portion of the conduct the court concluded was improper) is itself conduct akin to acting in bad faith, vexatiously, wantonly, or for oppressive reasons. The court does not reward such conduct.

The court concludes there is no basis for imposing appropriate and proper sanctions under the inherent powers of the court and 11 U.S.C. § 105(a), to the extent applicable. The court does not find the conduct of Plaintiff and Plaintiff's Counsel (while questionable in some respects and possible examples of what not to do for a law school class) to be such which abuses the judicial process, tarnishes the court, and warrants punishing the alleged wrongdoer (Plaintiff or Plaintiff's Counsel) to protect the integrity of the court. Awarding Defendant hundreds of thousands of dollars would reward Defendant and Defendant's Attorney for not litigating their side of the case, not properly using the judicial system, and choosing a strategy for which they could allege being "forced" to incur the hundreds of thousands of dollars of legal fees they elected to "suffer."

**Required Lodestar Analysis
and Evidence**

Even if the court were to believe that imposing attorney's fees sanctions was proper, Defendant has chosen to ignore basic, well established Ninth Circuit law of what must be provided for a court to make an informed, intelligent determination of attorney's fees to be awarded. Defendant's "strategy" in advancing this Motion is consistent with what appears to be Defendant's litigation strategy - just ask for it, say it, argue it, do not do what is required, and do not do anything to assert Defendant's right to manage or reduce litigation expenses. Then, have Defendant be "highly offended" and demand to be paid for conduct that Defendant did not find improper enough to exercise his rights and avoid running up huge legal fees.

As well established in the Ninth Circuit, whether for a prevailing party or professional in

a bankruptcy case, "the primary method" to determine whether a fee is reasonable is by using the lodestar analysis. *Marguiles Law Firm, APLC v. Placide (In re Placide)*, 459 B.R. 64, 73 (B.A.P. 9th Cir. 2011) (citing *Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465, 1471 (9th Cir. 1983)). The lodestar analysis involves "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* (citing *In re Yermakov*, 718 F.2d at 1471). Both the Ninth Circuit and the Bankruptcy Appellate Panel have stated that departure from the lodestar analysis can be appropriate, however. *See id.* (citing *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc. (In re Puget Sound Plywood)*, 924 F.2d 955, 960, 961 (9th Cir. 1991) (holding that the lodestar analysis is not mandated in all cases, thus allowing a court to employ alternative approaches when appropriate); *Digesti & Peck v. Kitchen Factors, Inc. (In re Kitchen Factors, Inc.)*, 143 B.R. 560, 562 (B.A.P. 9th Cir. 1992) (stating that lodestar analysis is the primary method, but it is not the exclusive method)).

Time and Billing Records

Here, Defendant merely states, "Contemporaneous time records are available for in camera review by the Court as the Plaintiff has filed a notice of appeal." Motion, Dckt. 260 at p. 2:12-13. However, Defendant has chosen to withhold these time and billing records from the court. Debtor's Attorney's rationale at the oral argument is that there were "attorney-client privileged matters" in the billings and in light of Plaintiff having filed an appeal, such should not be disclosed to Plaintiff. Defendant's Attorney suggested a process could be worked out where they could redact information, obtain a protective order, allow Plaintiff's Counsel (who is not representing Plaintiff on the Appeal) to review them, but not disclose the records to Plaintiff.

Defendant's Attorney is experienced, certified, and has litigated in State and Federal Trial Courts, as well as in the State and Federal Appellate Courts. Such an attorney well knows that the billing records are necessary for a court to make an informed and intelligent decision as a request for attorney's fees. Such an experienced attorney knows not to put attorney-client privileged information in the billing records, but keep that for secure attorney-client communications. This is even more well known for attorneys experienced in bankruptcy proceedings – such as Defendant's Attorney – who know that such billing records must be filed, are open for review, and required when

21

If the court were to look for conduct which assaulted the integrity of the court and an attempt to abuse the Federal Judicial Process, such a Bill of Cost including attorney's fees and "sanctions" disguised as "Other costs" may well be conduct falling into such conduct. Next, asserting without merit that 11 U.S.C. § 523(d), which applies only with respect to a consumer debt, applies to the commercial debt at issue in this Adversary and all other debts if the court so chooses to ignore the plain language of 11 U.S.C. § 523(d),[2] and then excluding billing statements from this Motion for Prevailing Party Attorney's Fees would also be near the top of the list.

As discussed above, Defendant's litigation conduct was tit for tat of the alleged conduct of Plaintiff, and possibly worse. As this court has addressed in denying the Motion for Prevailing Party Fees and above, Plaintiff eschewed taking any simple, easy action to have the court address any alleged improper conduct of Plaintiff. Rather, Defendant's strategy was to pile up legal fees, have Defendant's counsel bill for legal work relating to now alleged improper conduct, and then seek to complain about it after the fact.

What Defendant alleges is such significant improper conduct as to warrant the court imposing $81,818.75 in sanctions (paid into Defendant's and Defendant's Attorney's pockets, in addition to requesting them as part of the requested prevailing party attorney's fees and slipping them into the Bill of Costs) to protect the integrity of the court fails, both legally and as to the evidence presented. While this has been a troubled litigation on both sides, Defendant contributed significantly to what it alleges as wrongs committed by Defendant. Such litigation strategy by Defendant, ignoring his discovery and other pre-trial rights, and running up his legal fees is not a basis for rewarding Defendant with an $81,818.75 "bonus" to "protect the integrity of the court." While Plaintiff's conduct does not represent the best, or even better, conduct, it does not rise to the

---

[2] The plain language of 11 U.S.C. § 523(d) stating (emphasis added):

(d) **If a creditor requests a determination of dischargeability of a consumer debt** under subsection (a)(2) of this section, **and such debt is discharged**, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

1 | basis for awarding Defendant sanctions or the court imposing corrective sanctions to be paid to the

2 | Clerk of the Court for the Federal Treasury.

3 |       The court concludes there is no basis for imposing appropriate and proper sanctions under

4 | the inherent powers of the court and 11 U.S.C. § 105(a), to the extent applicable.  The Motion for

5 | Sanctions is denied.

6 | **Dated:** May 25, 2022                     **By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

1
2

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

3
4

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

5
6
7

| Debtor(s) | Attorney for the Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Trustee** (if any) | Nicholas B. Lazzarini, Esq.<br>770 L Street, Ste. 950<br>Sacramento, CA 95814 |
| Sheila Gropper Nelson, Esq.<br>50 Osgood Place, 5th Floor<br>San Francisco, CA 94133 | |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28